No. 84-279

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

DONALD TACKE,

        Plaintiff and Appellant,

-vs-

VERMEER MANUFACTURING CO.,

        Defendant and Respondent.

---

APPEAL FROM: District Court of the Eighth Judicial District,
In and for the County of Cascade,
The Honorable John M. McCarvel, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Regnier, Lewis & Boland; Stephens D. Roberts argued,
        Great Falls, Montana

    For Respondent:

        Marra, Wenz, Johnson & Hopkins; Jospeh Marra & David
        E. Bauer argued, Great Falls, Montana

---

Submitted: October 29, 1985

Decided: January 23, 1986

Filed: JAN 23 1986

_____
Clerk

Mr. Chief Justice J. A. Turnage delivered the Opinion of the Court.

Plaintiff appeals a jury verdict entered in the Eighth Judicial District, Cascade County, on May 15, 1984, in favor of defendant, manufacturer and seller of Vermeer 605C large round hay baler with compression feed rollers. Plaintiff lost part of his right foot as a result of an accident involving the compression feed rollers.

We remand for a new trial. Because of instructional and procedural error, including a denial of a juror challenge for cause, plaintiff was denied a fair trial.

Donald Tacke filed a complaint against Vermeer Manufacturing Company (Vermeer) on September 10, 1982, to recover compensatory and punitive damages for personal injuries suffered on September 12, 1979. Vermeer manufactured and sold the Vermeer 605C large round hay baler with compression feed rollers involved in the partial amputation of plaintiff's right foot. Plaintiff sued under theories of strict products liability, negligence and breach of warranty. Following jury trial which commenced on March 26, 1984, the jury returned a 9-3 verdict in favor of defendant.

Plaintiff appeals, raising the following issues for our consideration:

1. Was it reversible error to deny the challenge for cause of a prospective juror who was the wife of a local seller of the manufacturer's product?

2. Was it reversible error to exclude evidence of similar accidents involving the product and to narrow strictly the "similar accident" definition?

2

3. Was it reversible error to allow defense to elicit expert testimony from a witness never listed in pretrial discovery as a proposed expert?

4. Was it reversible error for the trial court to offer instruction no. 13 which misstated plaintiff's theory of the case and denied plaintiff two of his contentions?

5. Was it reversible error to offer the court's instruction no. 20 on manufacturer's duty to warn which was in conflict with the evidence and the law?

Because we find sufficient reason to remand, we will not consider additional issues raised, including judicial comment upon testimony in the presence of the jury, an instruction given on proximate cause, plaintiff's refused instruction on defects that enhance injuries, and a refusal to accept an offer of proof in rebuttal to defendant's opening statements.

Donald Tacke, a hired hand at the Mehmke ranch east of Great Falls, Montana, was baling barley straw, pulling a Vermeer 605C large round baler behind the tractor. Vermeer balers have no engines; they operate on power transferred from the tractor through a power take-off (PTO) shaft. This particular model has compression rollers. As the baler is pulled through the field, its pickup reel with revolving metal pickup teeth turns rapidly and lifts the already swathed or combined crop from the ground. The pickup reel guides the straw into two compression rollers which operate under 800 pounds of pressure to press the straw into a kind of ribbon to feed into the bale chamber. In the bale chamber a series of belts compacts the straw into a tight round bale about six feet by five feet. The tightness of the bale is determined by the belts in the belt chamber.

Tacke had run into problems with straw building up in front of the compression rollers, plugging up and preventing further feeding of straw into the machine. As he had many times before, he dismounted from the tractor leaving the PTO on. His boss had done the same thing, warning not to do so: "Do as I say, not as I do." There was a decal on the machine recommending turning off the PTO. However, it was a common practice not to turn off the PTO if the build-up was in front of the rollers because it took longer with the machine off to clear the plug. The operator had to get in and manually pull out the straw. With the PTO on, a quick kick could clear the plug. The 605C plugged frequently, and the frustration to get the job done led the operators to choose expedience. On September 12, 1979, when Tacke kicked the plug with his foot, the compression rollers pulled his foot in, and he lost part of his right foot.

Vermeer now also makes open-throat balers in which the hay feeds directly into the bale chamber. Gary Vermeer designed the compression roller baler in 1975, although he knew that the previous Allis Chalmers model had accidents in its feed rollers. There were other patented concepts for noncompression roller balers when Vermeer marketed the 605C in 1972. When this baler was sold in 1975, Sperry-Holland had already marketed an open-throat baler.

Stanley Vermeer, Gary's son, designed an open-throat model which Vermeer marketed after July 1976. He testified by deposition that the open-throat model eliminated one place where humans could be injured--the feed in-take area. Neither of the Vermeers had training in engineering or design.

During the jury selection on March 26, 1984, prospective juror Jean Mundt informed the court that her husband

4

sold Vermeer balers for the area. The court denied plaintiff's challenge for cause of juror Mundt even though she thought her husband might have sold the baler involved in the case. She knew that her husband and Carl Mehmke, owner of the baler, "had worked together on this project." She believed that her husband thought the product was safe. When questioned as to any difficulty in being equally fair to both sides, she said, "Well, perhaps. I can't--I don't know. Perhaps I would." She then stated that she thought if she heard the whole thing she could judge it. The court denied plaintiff's second attempt to challenge juror Mundt for cause, concluding that she would be fair and impartial. Finally, plaintiff was forced to use a peremptory challenge and did not have a peremptory challenge left to exclude a prospective juror who indicated that certain product liability suits were specious and pricing manufacturers out of business.

At trial, plaintiff's theory of the case was that the Vermeer 605C baler was defective and unreasonably dangerous because compression feed rollers were an unnecessary hazard and were inadequately guarded, warning decals violated industry standards and were inadequate, and lack of an emergency shut-off in the design unreasonably enhanced plaintiff's injuries. Plaintiff presented expert testimony to demonstrate that the hazards were unreasonable because design modification could guard against the compression rollers. Further, the design was unnecessary in the first place because Vermeer and others had successfully designed and sold balers without compression rollers and the state of the art would have allowed it in 1975 when the baler was purchased.

Plaintiff tried to present testimony that Vermeer had notice that the 605C was unsafe because numerous accidents were reported, in contrast to no accidents reported in its bale chamber on open-throat balers. The court refused to allow the evidence on open-throat balers. The court also strictly limited the introduction of accidents to those feed-intake accidents in which the PTO was left on when the operator left the tractor, ". . . similar accidents where there has been an intentional act on the part of the operator for getting into those compression rollers while the PTO was operating."

Plaintiff's counsel in his case-in-chief presented expert testimony from John Sevart, a licensed professional mechanical engineer in private practice with experience in safety and human factors in the design of mechanical equipment. Plaintiff also called Ivan Brand, production safety director at Vermeer since 1977, as an adverse witness. His duty at Vermeer is devoted primarily to product liability litigation. Before he took this position in 1977, Vermeer had no safety director.

Defense counsel in his case-in-chief called Randall Swanson and Roger MacCarthy to testify as experts and presented expert testimony from Lee Carr by deposition. Vermeer had listed these three as experts in answer to interrogatories requesting that Vermeer furnish names of experts and expected subject matter.

Defense also called George McConeghy, a former employee of Massey Ferguson ("Massey"), who was apparently present to discuss the arms-length transaction between Massey and Vermeer in the purchase of balers to sell under the Massey trademark. McConeghy was not listed as an expert witness.

6

In his trial testimony, he narrowed the input of his company on the balers to a "subjective safety evaluation" with him as "more or less the team leader in a rough sort of way," providing "both functional and subjective safety evaluations." Under cross-examination, McConeghy stated that he never worked as an engineer on the board at Massey and had no training in human factors. His testimony basically centered upon the fact that Vermeer was the only manufacturer which would let Massey market its baler in exchange for a "hold harmless" deal. On redirect examination, defense asked for McConeghy's expert opinion: "Do you believe that this machine is defective or unreasonably unsafe?" Plaintiff's objection was overruled, and McConeghy proceeded to testify emphatically that the machine was not defective nor unsafe, and that the cause of the accident was operator omission and commission.

In settling jury instructions, the court gave its own instruction no. 13:

> You are instructed that: The Plaintiff has alleged that the Defendant manufactured the Vermeer 605C baler which was defectively designed and unreasonably dangerous for its intended use because the power operated rollers were not covered by any guarding or protective device, and the Defendant did not adequately warn the Plaintiff of the danger.
>
> In order to recover on the allegation of the design defect, the Plaintiff must prove:
>
> First, that the Defendant designed and manufactured the 605C round hay baler which at the time of manufacture was defective in design and unreasonably dangerous to the user because the power operated rollers were not covered by any guarding or protective device or the warnings of the danger were inadequate.

> Second, that at the time of the accident the 605C round hay baler was being used by Donald Tacke in a manner reasonably anticipated by the Defendant.
>
> Third, that the defective design of the 605C round hay baler or inadequate warnings of the danger proximately caused injury to the Plaintiff.

Plaintiff objected that the court's instruction left out the central contention that the rollers were an unnecessary hazard in the first place.

The court also offered its own instruction no. 20 on duty to warn, despite plaintiff's objections to the last two sentences:

> . . . There is no duty on the part of a manufacturer to give a warning of a product-connected danger where the person who claims to be entitled to the warning actually knows of the danger. A person is not entitled to be warned about something he already knows.

John Sevart, plaintiff's expert had testified at the trial:

> The purpose of an appropriately designed warning is to reduce the risk associated with the hazard in two ways. First to inform the uninformed or the inexperienced person, and secondly to remind the person who is knowledgeable of the machine that might forget that the hazard was present. [Emphasis added.]

Ivan Brand, Vermeer's corporate representative, also conceded that one purpose of an adequate warning would be to remind someone of a known hazard or danger. Brand acknowledged that the warning decal sent out two years after Tacke's accident complied with applicable industry standards, unlike the decal at the time of the accident which did not include the appropriate signal word, colors, or recommended safety alert symbol. The later symbol specifically described the hazards of the compression rollers and had a drawing of a person caught in the rollers. In contrast, the worn decal on the

8

baler Tacke operated had a warning: "Caution Accidents can be avoided by observing the rules for safety given below." Below in smaller letters were six instructions. Number 2 said to disengage PTO before leaving tractor seat; Number 5 admonished to use "adequate HP tractor"; and Number 6 recommended studying the manual before operating the machine. Nowhere was there specific warning on the hazard of the rollers.

I

Refusal to dismiss juror for cause. This Court recently held that the standard of review of denial of juror challenges is that for review of other findings and judgments, i.e., a requirement of abuse of discretion for reversal. Abernathy v. Eline Oil Field Services, Inc. (Mont. 1982), 650 P.2d 772, 778, 39 St.Rep. 1688, 1695. There we vacated and remanded a judgment for the defendant where the court erred in failing to dismiss a juror for cause and then proceeded to rehabilitate the juror in examination of the juror.

Here, the court twice refused to dismiss the juror: (1) where there was a relationship or an interest in the action as proscribed in § 25-7-223(5), MCA (husband sold the particular type of baler); and (2) where there was bias as proscribed under § 25-7-223(7), MCA (wife did not know if she could be fair but "probably could," her husband thought the baler was safe, and persons were responsible for themselves on the farm). As in Abernathy, plaintiff was forced to his prejudice to exercise a peremptory challenge. Although the court did not, as in Abernathy, engage in its own rehabilitative examination, the court forced plaintiff's counsel to

needless colloquy with the juror in which she demonstrated her confusion as to how she could be "fair."

We hold that denial of plaintiff's challenge for cause of juror Mundt amounted to an abuse of discretion, meriting the grant of a new trial.


II

Excluded evidence of other Vermeer compression roller accidents. Appellant contends that in plaintiff's attempts to show defendant knew that the compression rollers are an unnecessary hazard, the court erred in excluding as inadmissible evidence of other accidents of which defendant had notice. Appellant further claims that the accidents were relevant to show foreseeability of baler operator conduct, failure to guard or to adequately warn, and greater susceptibility of compression roller balers to feed-intake accidents. Therefore, the excluded evidence was relevant to the issues of whether the compression roller design rendered the product defective and unreasonably dangerous and whether Vermeer had notice of the design defect. Appellant claims all seventy-two accidents were similar in that they involved injuries and deaths to operators in the compression rollers, and this evidence was highly probative on the issue of defectiveness.

Respondent counters that the court did not abuse its discretion in excluding evidence of other feed-intake accidents where the product and circumstances were not substantially the same and plaintiff did not meet his burden of proof to demonstrate the similarity to the case at bar. Kuiper v. Goodyear Tire & Rubber Co. (Mont. 1983), 673 P.2d 1208, 1219, 40 St.Rep. 1861, 1872-1873. Respondent claims that the court admitted the introduction of thirty accidents

"where there has been an intentional act on the part of the operator for getting into those compression rollers while the PTO was operating." Respondent contends plaintiff failed to meet the requirement of showing that the inadmissible accidents met this reasonable limitation.

We find the limitation was error and denied plaintiff the opportunity to present relevant evidence on the notice defendant had as to accidents specifically in the feed-intake area, i.e., the location of the compression rollers.

Accidents need not be identical to be admissible. ". . . Absolute identity of circumstances is not necessary." Runkle v. Burlington Northern (1980), 188 Mont. 286, 292, 613 P.2d 982, 986. We have said that a trial court should make an effort "to allow the admission of evidence of only those accidents where both the product and the circumstances surrounding the accident were similar to the case at bar." Kuiper, supra. Plaintiff sought to introduce only evidence involving this product designed by Vermeer and circumstances involving injuries or death in the compression rollers of this product. We note that the plaintiff acquired knowledge of the accidents from defendant's answers to interrogatories. This list prepared by Vermeer indicated that Vermeer had notice of injuries involving operator entanglement in the compression rollers. This evidence was relevant and should have been admitted. Furthermore, the list indicated the magnitude of the alleged defect and foreseeability of operator conduct.

III

Eliciting expert testimony from a witness not listed as an expert. Vermeer argues that the failure to list

11

McConeghy as an expert did not prejudice plaintiff when plaintiff qualified the witness both in deposition and trial questioning.

We disagree. It is widely understood that not all testimony elicited in depositions is admissible in trial. Satisfied by his probing in deposition that the witness had no expertise in design of the balers and by the interrogatories that defendant did not intend to introduce McConeghy as an expert witness, plaintiff confined his cross-examination to peripheral issues such as warning decals, operators' manuals, and the guarding by longer tines on the Massey version of Vermeer 605C. In cross-examination testimony, McConeghy testified as to safety procedures at Massey in subjective evaluations of the machine, in putting out a safety manual, and in designing decals to comply with industry standards. In fact, he testified that Massey substantially relied on Vermeer's expertise in the large round baler when it entered the contract and that he was not an expert on the internal mechanization of the Vermeer machine.

On redirect examination, defense counsel asked, over objection, McConeghy's opinion as to whether the machine was defective or unreasonably unsafe. Not only was he not listed as an expert, but there was no adequate foundation in trial questioning to qualify him to give this opinion. We find the court abused its discretion in admitting McConeghy's opinion as expert testimony where he was not listed as an expert in interrogatories and not qualified by trial testimony to give expert testimony.

The court allowed McConeghy to testify as to his opinion on the cause of the accident.

> Opinion evidence concerning the cause of
> an accident is admissible only if the
> subject matter is beyond the ordinary
> understanding of the jury. . . . The
> cause of the accident must be suffi-
> ciently complex to require explanation.
> [Citations omitted.]

Ployhar v. Board of Trustees of Missoula (Mont. 1980), 609

P.2d 1226, 1228, 37 St.Rep. 744, 746.

McConeghy, not qualified as an expert trained in human

factors or safety, testified to an opinion as to the cause of

an accident which was within the ordinary understanding of

the jury. This opinion invaded the province of the jury to

determine if plaintiff's acts of "omission," not turning off

the PTO, and "commission," reaching in and kicking the plug,

were the proximate cause of the accident.


IV

Court's instruction no. 13. Appellant contends that

this instruction, given over objection, did not contain the

material contentions of plaintiff raised in pleadings and

supported by evidence that the compression rollers were an

unnecessary hazard and that the machine had no emergency

shut-off device to minimize injuries. The central contention

at trial was that the rollers were an unnecessary hazard that

impaired the efficiency of the machine by causing frequent

plugging, thus encouraging operators to approach the area of

the hazard to clear the plugs while the power was engaged.

Appellant also presented evidence that the open-throat,

noncompression balers plugged less frequently, that Vermeer

sold open-throat balers for eight years before trial (and had

sold more of these than the compression roller variety) and

that Vermeer had no notice of a single accident to an opera-

tor in the feed area of 35,000 open-throat Vermeer balers.

13

Vermeer's president under oath stated that elimination of the compression rollers eliminated one place where humans could be injured. In Vermeer's patent on its open-throat baler, Vermeer stated that the starter roller provided an inherent safety feature in eliminating the material compression roller. Plaintiff's expert testified that based upon the technology in 1975, the baler could and should have been manufactured without compression rollers.

Appellant contends that he was entitled to have all of his material contentions as to defectiveness and unreasonable danger submitted to and determined by the jury and that it was reversible error for the court to refuse to instruct on the material issues of unnecessary hazard and enhancement of injuries by lack of an emergency stop device. When the court undertakes to offer its own instruction on the issues raised by plaintiff, its statement must be complete. See Rand v. Butte Electric Ry. Co. (1910), 40 Mont. 398, 107 P. 87. Incompleteness alone, however, is not sufficient for reversal if the failure to instruct was rendered harmless by an otherwise adequate charge to the jury. Rand, supra.

Respondent claims that the instructions, weighed as a whole and read together in context, fully define the issues and, therefore, no prejudicial, reversible error exists. Gibson v. Western Fire Insurance Co. (Mont. 1984), 682 P.2d 725, 41 St.Rep. 1048. Respondent refers to seven other instructions which allegedly cover the issues: (1) No. 12--strict liability in tort; (2) No. 14--defective design; (3) No. 16--reasonably foreseeable risks in environment; (4) No. 17--"reasonably safe"; (5) No. 18--utility; (6) No. 21A--manufacturer not an insurer; (7) No. 21B--"state of the art."

14

We agree with appellant that the other instructions did not allow the jury to consider his central contentions--that the compression rollers were an unnecessary hazard and that defendant enhanced injuries with failure to provide an emergency stop device. The court's instruction told the jury that unless the plaintiff proved that the compression rollers were not covered by a guard or protective device or the warnings were inadequate thereby causing the injury that he could not recover on the design defect. This instruction amounted to a directed verdict on plaintiff's central theory, that the compression rollers constituted an unnecessary hazard which rendered the machine defective and unreasonably dangerous. When plaintiff objected and raised the issue of the unnecessary hazard, the court rejected his contention. It is reversible error to refuse to instruct on an important part of a party's theory of the case. Northwestern Union Trust Co. v. Worm (Mont. 1983), 663 P.2d 325, 327, 40 St.Rep. 758, 761.

Where there was no question that plaintiff's case rested upon the issue of design defect in that he alleged the compression rollers were hazardous and unnecessary in the first place, the court erred in refusing to so instruct. While this may have appeared to the court as simplification of the issues, it did deprive the plaintiff of two of his contentions and possible jury argument on the instruction. A party has a right to have jury instructions which are adaptable to his theory of the case. Northwestern Union Trust Co. v. Worm, supra; Williams v. Montana National Bank of Bozeman (1975), 167 Mont. 24, 31, 534 P.2d 1247, 1251; Wollan v. Lord (1963), 142 Mont. 498, 504, 385 P.2d 102, 106.

V

Court's instruction no. 20 on duty to warn.

Instruction no. 20 concluded that a manufacturer has no duty to warn a person who claims to be entitled to a warning if the person actually knows of the danger. "A person is not entitled to be warned about something he already knows." Appellant contends that this instruction conflicted with the testimony of both plaintiff's expert and Vermeer's corporate representative, Ivan Brand, that the purpose of a warning was to remind someone of a known hazard. Brand admitted that the decal did not comply with industry standards and that a decal distributed two years after the injury did comply and could help prevent serious injury. Tacke testified that he knew generally that machines were dangerous but did not know that he could become entangled in the rollers. The new decal warned specifically of the compression roller danger and showed a person being caught in the rollers.

Respondent claims that warnings are required only if the danger is not open and obvious, and only if the plaintiff was unaware of the danger. Respondent misconstrues Brown v. North American Mfg. Co. (1978), 176 Mont. 98, 576 P.2d 711, in drawing an inference that there is no duty to warn of an obvious danger, or drawing the inference further of no duty to warn of what plaintiff already knew.

This Court in Brown, however, rejected the patent/latent distinction as a bar to recovery, finding it a rule to encourage misdesign. "Rather, the obvious character of a defect or a danger is but a factor to be considered in determining whether the plaintiff in fact assumed the risk." Brown, 576 P.2d at 717. This Court also followed the rule on duty to warn of dangers in potentially harmful but otherwise

16

"nondefective" products:   if the product is unreasonably dangerous and a warning should be given but is not given, then the product is automatically "defective."   Brown, 576 P.2d at 718-719, citing Jacobsen v. Colorado Fuel & Iron Corporation (9th Cir. 1969), 409 F.2d 1263, 1271.   The court erred under the facts of this case in instructing the jury that there is no duty to warn of a known danger.

Vacated and remanded for a new trial.

_J. A. Turnage_
Chief Justice

We concur:

_John C. Sheehy_

_John Conway Harrison_

_Frank B. Morrison_

_____

_L. C. Gulbrandson_

_William E. Hunt_
Justices

17