No. 86-446

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

---

MARK TOWNSEND, Individually as
Guardian of WAYNE TOWNSEND, a
minor,

               Plaintiffs and Respondents,

     -vs-

STATE OF MONTANA,

        Defendant and Appellant.

---

APPEAL FROM:  The District Court of the Second Judicial District,
                In and for the County of Silver Bow,
                The Honorable Mark P. Sullivan, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Poore, Roth & Robinson; J. Richard Orizotti, Butte,
        Montana

    For Respondent:

        Michael McKeon, Anaconda, Montana

---

Submitted on Briefs:  April 30, 1987

Decided:  June 16, 1987

Filed:  JUN 17 1987

*Ethel M. Harrison*

---

Clerk

Mr. Justice R.C. McDonough delivered the Opinion of the Court.

The State of Montana appeals the May 28, 1986, order of the District Court of the Second Judicial District granting plaintiff, Mark Townsend's motion for a new trial. We reverse.

On June 4, 1983, nine-and-a-half year old Wayne Townsend was injured when his bicycle hit a pothole on Saddle Rock Road. Saddle Rock Road is a 1.9 mile long black-top road, owned and maintained by the State of Montana. The road is located in the Butte Section of the Butte Division of the Montana Department of Highways. Pat Kane was the Field Maintenance Chief at the time of the accident. Bill Steyh was the Field Maintenance Supervisor (section man) in charge of the Butte Section. Both individuals testified at trial that while traveling Saddle Rock Road in May of 1983, they noticed potholes starting to form at the site of Wayne's accident. Neither man thought, in view of the limited use of the road, that the forming potholes constituted an immediate danger to the public. Therefore, repair of the potholes was not immediately ordered. The potholes were not filled until September of 1983, three months after the accident.

The deposition of Don Gruel, Administrator of the Maintenance and Equipment Division of the Montana Department of Highways, was read at trial. Gruel was questioned extensively about a 1965 statute requiring the Department to develop rules for the construction, repair, maintenance and marking of state highways and bridges, § 60-2-201(4), MCA. Gruel stated that he did not believe the Department had responded to that mandate. He stated further that although the Montana Department of Highways Maintenance Manual was probably the closest thing to rules the Department had in

2

1983, it was not developed in response to § 60-2-201(4), MCA. Rather, the manual was developed in 1973 at Gruel's instigation to provide guidelines for Department employees state-wide.

The jury was instructed that the Department was required by law to adopt rules for the construction, repair, maintenance, and marking of state highways and bridges and that the Maintenance Manual "was adopted as required by law." Although the State objected to the instruction at trial, neither party objects to this characterization of the manual on appeal. We therefore find for purposes of this appeal only that the Maintenance Manual contains the statutorily-mandated rules.

The manual and its purpose are important to this appeal because it contains the following:

4. <u>MAINTENANCE</u> <u>OF</u> <u>BITUMINOUS</u> <u>SURFACE</u>

4.10 <u>GENERAL</u> <u>DESCRIPTION</u>

. . .

The early detection and repair of minor blemishes is the most important phase of maintenance work. Cracks and other surface breaks which are almost unnoticeable in their early stages, may develop into major repair jobs . . . if unattended. Such breaks can occur even in a few days where traffic is heavy. For this reason, close inspection of the pavement by competent and experienced personnel is absolutely necessary.

. . .

4.60 <u>PATCHING</u> <u>POT</u> <u>HOLES</u>

This type of failure should have immediate attention. Pot holes or chuck holes are dangerous to traffic, increase rapidly in size and are excellent for feeding water into the base and subgrade.

Maintenance Manual, pp. 4-1 and 4-6.

Testimony was received regarding the extent employees were expected to comply with the Maintenance Manual. Pat Kane, Field Maintenance Chief, repeatedly emphasized the discretionary nature of the "guidelines" contained therein. However, plaintiff's attorney would then attempt to impeach Kane with remarks made at his deposition indicating that adherence to the manual was necessary to insure proper work performance. Bill Steyh, section man for the Butte Section, testified that he referred to the manual as a guideline to be followed whenever possible and that "it was not good practice to not go by the book."

Pat Kane and Bill Steyh testified about the maintenance work performed on Saddle Rock Road over the years. Written documentation indicated that the last major repair of the area prior to Wayne's accident occurred September 4, 1981, when a blade patch approximately .3 miles long was laid. Both individuals testified that many potholes were hand patched between the September 1981 and September 1983 work; however, they did not remember whether any of the patches were made in the area of the accident. Their diaries indicated hand patching had occurred, but did not specify where.

Following the close of three days of testimony, the jury returned a verdict finding that the State of Montana was not negligent. Plaintiff moved for a new trial April 21, 1986. The memorandum and order granting plaintiff's motion was issued May 28, 1986. In it, the trial judge stated:

> [T]he evidence it received during the course of this trial has established overwhelmingly and conclusively that the State of Montana, through its Department of Highways, was negligent for failing to maintain Saddle Rock Road in a reasonably safe condition. When the State's employees admit that to violate its maintenance manual is bad practice

on their part and then have evidence showing repeated violations of that maintenance manual, there has been established, in this court's opinion, negligence as a matter of law.

The State of Montana raises three issues in its appeal of the order granting Townsend a new trial.

1. Was there substantial evidence to support the jury's verdict that the State of Montana was not negligent?

2. Did the District Court abuse its discretion in ordering a new trial and also holding that the State of Montana was negligent as a matter of law?

3. Did the District Court err in refusing to allow certain testimony relating to the factors considered by the State of Montana, Department of Highways in maintaining roadways, including Saddle Rock Road?

Our resolution of the first two issues renders consideration of issue number three unnecessary.

The first and second issues are intertwined. The parties are in agreement that highway employees were aware of the potholes approximately one month before Wayne's accident. They also agree that the potholes were repaired approximately four months after they were first noticed. The real question is whether the State's failure to immediately repair these potholes was in violation of its duty to exercise ordinary and reasonable care in maintaining Montana's roads and highways.

The jury found no violation of the reasonable care expected. The trial judge disagreed and granted Townsend's motion for a new trial. As support for his decision, the trial judge found that because the State's employees admitted violation of their Maintenance Manual was bad practice and because there was evidence of repeated violations of that manual, negligence existed as a matter of law. The State

5

argues, and we agree, that this conclusion is in violation of Cash v. Otis Elevator Co., et al. (Mont. 1984), 684 P.2d 1041, 41 St.Rep. 1077.

In Cash, we held that violations of administrative codes not incorporated into a statute by reference are evidence of negligence, but not negligence per se. Likewise, the admitted violations of the Maintenance Manual provided evidence of negligence. The State then had the burden of producing other evidence to show it had exercised due care in maintaining Saddle Rock Road. Apparently, in the jury's mind at least, the State succeeded in meeting this burden.

We find that the trial judge erred in concluding that the conduct of the State's employees was negligent as a matter of law. The trial judge relied upon this erroneous principle of law in granting a new trial. Applying the correct standard of negligence to this case there is substantial credible evidence to support the jury verdict.

If there is substantial credible evidence to support the jury's verdict, the verdict should stand. Maykuth v. Eaton (Mont. 1984), 687 P.2d 726, 727, 41 St.Rep. 1800, 1802.

Pat Kane and Bill Steyh testified that the potholes were just forming and only 1/2 to 3/4 inches deep when first observed in May of 1983. Phil Krisk, the individual who ultimately patched the potholes, testified that they were three inches deep in September, three months after Wayne Townsend's accident. Mark Townsend testified that the potholes were six to eight inches deep at the time of Wayne's accident. The jury was free to accept the testimony of whomever they believed to be most credible.

Pat Kane testified that pothole size is greatly affected by the type of vehicles using the road. Trucks grossing over 100,000 pounds cause potholes to grow much more quickly than do ordinary passenger cars. People who resided on or near

6

Saddle Rock Road testified that traffic on that road consisted primarily of the residents' vehicles and a few trucks. Thus, there was sufficient evidence to support a determination by the jury that the State's employees acted reasonably in not immediately repairing shallow potholes which were not susceptible to rapid growth.

Townsend contends the jury's verdict improperly invokes the financial feasibility defense. We disagree. The financial feasibility defense has been soundly rejected by our Court when cost is the State's sole excuse for its failure to construct or maintain properly. State ex rel. Byorth v. District Court (1977), 175 Mont. 63, 572 P.2d 201. "However, where cost is but one among many factors affecting the State's choice of a particular method of construction or maintenance, it is relevant evidence on the reasonableness of the alternative taken." Modrell v. State (1978), 179 Mont. 498, 501, 587 P.2d 405, 406.

The jury was given the identical instruction approved in Modrell as to the impermissible use of the financial feasibility defense.

INSTRUCTION NO. 16

> If you find that the Defendant, State of Montana, was negligent in planning, constructing or maintaining the highway in question you may not excuse the State's negligence on the ground that proper maintenance or lack of sufficient employees was beyond the financial means of the State of Montana. Lack of adequate funds or an adequate number of employees is not a factor in the duty of the State to plan, construct and maintain its highways in a reasonably safe condition.

Here, cost is not the State's sole defense. There is a limit to how many potholes can be repaired in any given time period. The Department's supervisory employees made a decision based on the severity of the potholes, as well as

7

the frequency and type of traffic on the road in determining whether repair of the potholes was immediately necessary. They took a calculated risk that the potholes were small enough and the traffic light enough that repair of the potholes could wait without endangering the safety of the traveling public. The jury agreed with the employees' decision. There is substantial credible evidence to support the jury's decision.

Reversed and remanded for reinstatement of the jury verdict.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

8