No.  90-322

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

DIRK WALDEN,

     Plaintiff and Appellant,

  v.

THE STATE OF MONTANA,
and THE MONTANA STATE
HIGHWAY DEPARTMENT,

     Defendants and Respondents.



APPEAL FROM:    District Court of the Eighth Judicial District,
                In and for the County of Cascade,
                The Honorable Thomas M. McKittrick, Judge presiding.

COUNSEL OF RECORD:

     For Appellant:

          Dennis Patrick Conner, Attorney at Law, Great Falls,
          Montana
          Patrick F. Flaherty; Flaherty & Winner, Great Falls,
          Montana

     For Respondents:

          Hon.  Marc  Racicot,  Attorney  General,  Helena,
          Montana; Norman C. Peterson, Assistant Attorney
          General, Helena, Montana; Lynn M. Grant, Assistant
          Attorney General, Helena, Montana

          Max Davis; Cure, Borer & Davis, Great Falls, Montana

Submitted on Briefs:  May 10, 1991

Decided:  October 2, 1991

Filed:  OCT - 2 1991

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

The appellant, Dirk Walden, appeals from the final judgment entered by the Eighth Judicial District Court, Cascade County. The jury found, by special verdict, that the respondent's negligence was not a legal cause of the appellant's injuries. The appellant requests a new trial. We affirm.

The appellant raises the following issues on appeal:

1. Whether the District Court improperly instructed the jury on the State's duty to maintain its highways.

2. Whether the District Court erred in giving Jury Instruction No. 39 regarding practicability and cost of highway repair.

3. Whether the District Court erred in refusing the appellant's challenge for cause of a prospective juror.

4. Whether the appellant was denied a fair trial as a result of the District Court's rulings on the evidence concerning the appellant's failure to wear a helmet.

5. Whether the District Court erred in allowing certain testimony of the State's witness concerning bicycle helmets.

On July 20, 1987, Walden suffered a serious head injury as a result of a bicycle accident. The accident occurred on the northbound entrance ramp to U.S. Interstate 15 near Great Falls.

Interstate 15 is a divided highway running north and south through Great Falls. The portion of the highway on which the accident occurred is located south of Great Falls on Gore Hill.

Near the top of the hill there is an overpass with an exit ramp allowing southbound traffic to exit the interstate and an entrance ramp allowing northbound traffic to enter the interstate. The entrance ramp descends down Gore Hill a distance of approximately 2,150 feet at a five percent grade before it merges with the northbound travel lanes of the interstate.

The interstate was constructed in 1967. The entrance ramps, exit ramps and shoulders are made of asphalt; the travel lanes consist of concrete slabs fifteen feet long, eight inches deep and one lane wide. Where the non-bonding asphalt and concrete meet, a longitudinal "seam" exists.

The concrete is originally poured in one piece. After the concrete sets, "contraction" cuts three inches deep are made across the width of the lanes every fifteen feet. The cuts serve to control the cracking of the concrete. When the concrete expands and contracts with temperature change, it cracks along the weakened cuts, as intended, forming the individual slabs.

The highway, therefore, is no longer a single structure, and each slab can move independently of the adjoining slab. Heavy truck traffic and natural forces such as heat, cold and moisture create "slab faulting." Slab faulting is the difference in concrete slab elevation that is formed by the shifting of the individual slabs in relation to one another. The movement of the slabs compresses the subgrade material underneath and causes the formation of air pockets. Water eventually fills these pockets and

3

when a heavy vehicle drives over the slab it exerts inordinate pressure on this water, forcing it to escape. Following the path of least resistance, the water is forced with tremendous energy out of both the contraction cracks between the slabs and the longitudinal seam between the concrete and the asphalt shoulder. In addition to the slab faulting, heavy traffic actually compacts the asphalt on the ramps and shoulders.

The result is that the transitional seam between the asphalt and the concrete spreads apart slightly, and at various points the concrete edge will be higher than the asphalt. This was the condition of the seam between the asphalt entrance ramp and the concrete travel lane where Walden had his accident.

On the day of the accident two friends, John Huotte and Andrew Flaherty, were bike riding near Walden's home in Great Falls and stopped for a visit. Walden decided to join Huotte and Flaherty on the bike ride. The three men biked to Tenth Avenue South and then decided to proceed up Gore Hill. They biked single file on the asphalt shoulder of Interstate 15 and up the southbound exit ramp to the top of Gore Hill. After resting at the top of the exit ramp, they crossed the overpass and proceeded down the northbound entrance ramp.

Walden was wearing specially designed cycling shoes that he had strapped on to his pedals before starting down the ramp. Huotte was in the lead, followed by Walden and then Flaherty. Testimony at the trial indicated that Walden and Flaherty were

"drafting." Drafting is a technique used by cyclists whereby a cyclist tries to ride in the vacuum created behind the cyclist in front of him or her, in order to generate a greater speed with less resistance.

Huotte and Flaherty agreed that the speed of the three bikes as they neared the bottom of the hill was about thirty miles per hour. Huotte also testified that he could hear Walden pedaling behind him as they approached the end of the entrance ramp.

Walden and Flaherty were travelling slightly faster than Huotte and moved out to Huotte's left in order to pass him. At the same time, Huotte began to move to his left so that he could get farther away from the guard rail and the debris lying on the shoulder to his right.

The three bikes were virtually side by side as they came to the end of the entrance ramp and Walden and Flaherty were forced to cross the transitional seam between the asphalt shoulder and the concrete travel lane. Flaherty successfully maneuvered his bike over the seam. Walden's tires slipped into the seam causing him to lose control of his bike. Walden fell, striking his head; he slid down the highway with his bike for about 70 feet and was still strapped into his pedals when he came to a stop.

The first issue on appeal is whether the District Court improperly instructed the jury on the State's duty to maintain its highways. Walden contends that the District Court erred in refusing to instruct the jury on his theory of the case. It is the

appellant's theory that the State has a duty to maintain its highways so that they are reasonably safe for bicyclists. To support this theory, the appellant offered Plaintiff's Proposed Jury Instruction Nos. 21 and 51. The District Court refused these instructions and instead gave Instruction No. 30 which was patterned after this Court's holding in Buck v. State (1986), 222 Mont. 423, 723 P.2d 210. Instruction No. 30 was identical to Plaintiff's Proposed Instruction No. 21 except that it omitted the specific reference to bicyclists and made general reference to "persons and vehicles." Plaintiff's Proposed Instruction No. 21 read in part:

> Although the State is not an insurer of one who uses the highways, it is under a duty to keep its highways in a reasonably safe condition for ordinary use thereof, <u>including use by bicyclists</u>. The State's duty extends to the paved portion of the roadway, and to the shoulders and the adjacent parts thereof.
>
> It is the further duty of the State to construct and maintain its highways so that no latent nor hidden defect or trap thereon constitutes an unreasonable danger to persons and vehicles, <u>including bicyclists</u>.

Instruction No. 30 omitted the emphasized portions.

All the given instructions must be read as a whole in determining whether the giving of certain jury instructions constitutes reversible error. If the given instructions, when viewed in their entirety, state the correct law applicable to the case, there is no reversible error. Jacobsen v. State (1989), 236 Mont. 91, 769 P.2d 694.

The appellant contends that the jury was left to speculate

6

about whether the State has a duty to maintain its highways, where bicycle travel is permitted, in a reasonably safe condition for bicyclists. The appellant insists that the State has such a duty and must make certain the interstate is reasonably safe for bicycles, not just "normal" vehicles.

The question for this Court is whether the instructions given to the jury correctly stated the applicable law. The instructions provided:

> You are instructed that Interstate 15 North and South Great Falls was at all times a public highway. [Instruction No. 10.]

> You are instructed that under Montana law a bicycle is defined as a vehicle and that Dirk Walden had the right to be riding his bicycle on Interstate 15 at the time of his accident.
> While the State of Montana Department of Highways may by rule prohibit bicycles from being used on interstates or public highways, the State adopted no such rule prohibiting bicycle use on Interstate 15. [Instruction No. 11.]

> You are instructed that a person operating a bicycle shall be granted all of the rights and shall be subject to all of the duties applicable to the driver of any other vehicle. [Instruction No. 12.]

When these instructions are read with Instruction No. 30, no room for speculation exists as to whether the duty to maintain the highways extends to bicyclists. The State's duty is as stated in Instruction No. 30, to maintain its highways "in a reasonably safe condition for ordinary use thereof." This duty extends to bicyclists if they are permitted on a specified highway. The jury was properly instructed on this rule of law. Whether or not the State breached this duty and whether or not any such breach was the

7

cause of Walden's injuries were questions for the jury to decide.

The State's duties with regard to the design, construction, and maintenance of Montana's highways apply equally to all permitted users, regardless of the user's status. In other words, automobilists, motorcyclists, bicyclists, pedestrians, and any other permitted users all are entitled to highways that are reasonably safe for ordinary use. Whether or not a given set of circumstances comprises "ordinary use" is a determination to be made by the jury.

The appellant points to a guide published by the American Association of State Highway and Transportation Officials (AASHTO) and the Federal-Aid Highway Program Manual as authority for his argument that the State owes a greater duty to maintain highways for bicycle traffic than the jury instructions reflected. The appellant interprets this literature as mandating that full consideration be given to safely accommodating pedestrian and bicycle traffic on all federal-aid highway projects. However, giving "full consideration" does not translate into a mandatory duty to bicyclists by the State greater than that upon which the jury was instructed.

The AASHTO guide provides guidelines, not strict standards, for the construction and design of bicycle routes. Furthermore, the purpose of the guide is to "provide information on the development of new facilities to enhance and encourage safe bicycle travel." Nowhere does the guide require the duty to bicyclists

8

that is suggested by the appellant. Likewise, the Department of Transportation Manual does not mandate a State duty to maintain its highways for bicyclists. The literature simply provides guidance for enhancing the safety of motor vehicle and non-motor vehicle traffic by planning for the potential conflict of the two types of traffic.

As we stated in Jacobsen, 236 Mont. 91, 769 P.2d 694, a party assigning error to the giving of jury instructions must show prejudice in order to prevail. The appellant has failed to show how the District Court's failure to give his Proposed Instruction Nos. 21 and 51 has adversely affected his substantial rights. The jury was properly instructed on the applicable law and Walden was not denied instruction on his theory of the case. The omitted language making specific reference to bicyclists was appropriately covered by the other instructions.

The second issue raised by the appellant is whether the District Court erred in giving Jury Instruction No. 39 regarding the practicability and cost of highway repair. The instruction read as follows:

> A public entity is not liable for injury caused by a dangerous condition of its property of which it had actual or constructive notice if it establishes that the action taken to protect against the risk of injury created by the condition or the failure to take such action was reasonable.
>
> In determining whether it was reasonable, you shall consider the time and opportunity the defendant had to take action and weight [sic] the probability and gravity of potential injury to persons the defendant should have foreseen might be injured against the practicability and

9

cost of protecting against the risk of such injury. [Instruction No. 39; emphasis added.]

The appellant argues that this instruction provides the State a financial feasibility defense. We disagree. The instruction assists the jury in evaluating the "reasonableness" of the State's actions. The financial feasibility defense would provide the State with a total escape from liability for failing to properly maintain the highways, based solely on a lack of sufficient finances. This defense has been rejected by our Court "when cost is the State's sole excuse for its failure to construct or maintain properly." Townsend v. State (1987), 227 Mont. 206, 210, 738 P.2d 1274, 1277. In this case, the District Court also gave the jury the instruction from Townsend clearly negating the financial feasibility defense. It provided:

> If you find that Defendant State of Montana was negligent in planning, construction, signing or maintaining the highway in question, you may not excuse the State's negligence on the ground that proper maintenance or lack of [sic] sufficient employees was beyond the financial means of the State of Montana. Lack of adequate funds or an adequate number of employees is not a factor in the duty of the State to plan, construct, sign or maintain its highways in a reasonably safe condition. [Instruction No. 27; emphasis added.]

The appellant argues that Instruction Nos. 39 and 27 contradict each other and leave the jury to consider a financial feasibility defense. We do not agree. As this Court stated in Modrell v. State (1978), 179 Mont. 498, 501, 587 P.2d 405, 406:

> [R]eliance on cost as the sole and determining factor would be tantamount to assertion of a financial feasibility defense and therefore impermissible. However, where cost is but one among many factors

10

affecting the State's choice of a particular method of
construction or maintenance, it is relevant evidence on
the reasonableness of the alterative taken.

The appellant's assertion that the State was provided a financial
feasibility defense is without merit. The State was entitled to
present evidence to the jury regarding the reasonableness of its
actions.

The third issue is whether the District Court erred in
refusing the appellant's challenge for cause of a prospective
juror. The prospective juror in question expressed his opinion of
lawsuits as cases where somebody is "trying to get a quick buck."
He expressed concern regarding the effect of too many lawsuits on
the economy of the nation and the State of Montana. He stated that
"I would definitely make it harder on [the appellant] than I would
on the State, I'm sure." Counsel for the State attempted to
rehabilitate him by inquiring whether he would be able to set his
preconceived opinions aside and follow the court's instructions.
The prospective juror responded "Yes, I think I could do that."
During the voir dire examination he also stated, in response to an
inquiry from the State's counsel, that he thought the State of
Montana should be liable for its negligent acts if its negligent
acts cause injury to a person. The District Court denied the
appellant's challenge for cause and the appellant subsequently used
one of his peremptory challenges to remove the prospective juror.

The appellant contends that the prospective juror showed an
unqualified opinion or belief as to the merits of the action and

11

that the District Court should have excused him for cause under § 25-7-223(6), MCA. He argues that the court's refusal to excuse the prospective juror for cause was prejudicial error in that he was compelled to waste one of his peremptory challenges.

The right to peremptory challenges is a substantial right but not every case of the forced use of a peremptory challenge is grounds for reversal. Abernathy v. Eline Oil Field Services, Inc. (1982), 200 Mont. 205, 216, 650 P.2d 772, 778. In the past, this Court's practice, in considering the trial court's refusal to dismiss a prospective juror for cause, has been to reverse only when there is shown an abuse of discretion on the part of the trial court. Abernathy, 200 Mont. at 214, 650 P.2d at 777; Mahan v. Farmers Union Cent. Exchange (1989), 235 Mont. 410, 417, 768 P.2d 850, 855; Tacke v. Vermeer Mfg. Co. (1986), 220 Mont. 1, 7, 713 P.2d 527, 531. It is appropriate at this time to clarify our standard of review.

Rule 47(a), M.R.Civ.P., states as follows:

**Examination of jurors.** The court shall permit the parties or their attorneys to conduct the examination of prospective jurors under its supervision. The court may supplement the examination by such further inquiry as it deems proper. Challenges for cause must be tried by the court. The juror challenged and any other person may be examined as a witness on the trial of a challenge. [Emphasis added.]

Under Rule 47(a), whether a prospective juror holds a preconceived opinion as to the merits of the case or is biased or prejudiced against one of the parties is a factual question to be tried by the trial court. Thus, in reviewing the trial court's decision to deny

12

a challenge for cause, this Court is reviewing a factual determination made by the trial court.

Rule 52(a), M.R.Civ.P., provides that:

Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses.

Rule 52(a) itself refers only to findings of fact specially found in actions tried without a jury or with an advisory jury. We have stated that the findings of fact required by Rule 52(a) are "nothing more than a recordation of the essential and determining facts upon which the District Court rest[s] its conclusions of law and without which the District Court's judgment would lack support." In re the Marriage of Barron (1978), 177 Mont. 161, 164, 580 P.2d 936, 938. Factual determinations made by the trial court when entertaining a challenge for cause do not fall squarely within the scope of Rule 52(a). However, because factual determinations are being made by the trial court, the "clearly erroneous" standard contained within the rule is the most appropriate standard for reviewing the trial court's decision to deny a challenge for cause. Therefore, in reviewing the trial court's refusal to excuse the prospective juror for cause, we will reverse only where it is shown that the court's findings are clearly erroneous.

In applying the clearly erroneous standard to the trial court's findings, our function is not to decide the factual issues de novo. We will not substitute our judgment for that of the trial court absent a showing that the court's findings are clearly

13

erroneous, even where there is evidence in the record to support contrary findings. Dennis v. Tomahawk Services, Inc. (1989), 235 Mont. 378, 379, 767 P.2d 346, 347. This is especially true when findings are based on determinations regarding the credibility of witnesses or, as in this case, the credibility of the prospective juror. In such a situation, the trial court must be afforded wide latitude in making its findings because the trial court is in a better position than this Court to determine whether the prospective juror is able to serve impartially. Only the trial court has the opportunity of seeing the prospective juror, hearing the testimony and noting the manner and demeanor of the prospective juror and the inflections in his or her voice, all of which bear heavily on the determination of credibility.

Turning to the particular facts of this case, our review of the "cold record" indicates that certain statements made by the prospective juror, standing alone, could support a finding of bias or prejudice. However, the prospective juror also stated that he thought he could lay his opinions aside and follow the trial court's instructions. The trial court had the opportunity to observe the prospective juror and to listen to his testimony, and based on its observations of his manner, demeanor and tone of voice, found that he could serve impartially. We cannot conclude that the trial court's finding was clearly erroneous; thus we find no clear error on the part of the trial court.

The fourth issue raised by the appellant is whether he was

denied a fair trial as a result of the District Court's rulings on the bicycle helmet issue.

The District Court denied Walden's motion in limine requesting that the State be precluded from presenting evidence that Walden was not wearing a helmet or that such nonuse of a helmet caused the accident. At the conclusion of the evidence, Walden moved for a directed verdict on the issue of helmet nonuse. This motion was also denied.

The appellant argues that the District Court's denial of his motions in limine and for a directed verdict unfairly allowed the jury to conclude that the State's negligence was not the cause of the appellant's injuries. We disagree.

Montana law does not require bicyclists to wear helmets; thus, the failure to wear a helmet ordinarily does not constitute negligence. Our decision in Kopischke v. First Continental Corp. (1980), 187 Mont. 471, 610 P.2d 668, that negligence could not be predicated upon the failure to wear a seat belt at a time when seat belt use was not required, is instructive in this regard. The issue in Kopischke was whether the trial court erred in not allowing the defendant to introduce a seat belt defense. We affirmed the trial court, holding that where the plaintiff could not have anticipated the defendant's negligence in causing the accident, the plaintiff's lack of use of a seat belt was not admissible to show negligence or reduce damages. Under Kopischke, the evidence concerning the appellant's failure to wear a helmet

was not admissible as to negligence. It was not admitted for that purpose. Here, the District Court specifically instructed the jury that the appellant's failure to wear a helmet was not a legal cause of the accident and did not constitute negligence.

The evidence also was not admissible on the question of damages under our holding in Kopischke. Thus, the District Court erred in admitting the evidence. In rendering its verdict in this case, however, the jury determined that any negligence of the State was not a legal cause of the appellant's injury; it never reached the question of damages. Thus, any error on the issue of helmet nonuse was harmless and the appellant was not denied his right to a fair trial.

The final issue raised is whether the District Court erred in allowing the testimony of Professor Curtis Shirer.

Walden testified in his deposition that he had taken a bicycle safety class at Montana State University. Professor Shirer was the instructor and was called by the State to describe the course material.

The appellant objected to much of Shirer's testimony on the grounds that it was expert opinion testimony. The State's response was that Shirer was a fact witness and was "not going to offer in any way his opinion."

Specifically, Walden objects to four items of Shirer's testimony. Shirer testified that in his course: he taught the absolute necessity of wearing a helmet when bicycle riding; he told

16

his students that the effect of falling off a bike without a helmet on is much like taking a cantaloupe and tossing it into the air and letting it hit the ground; he gave examples to his students of friends of his that have had helmets save their lives in bicycle accidents; and he told his students of studies that indicate 75 percent of all bicycle fatalities are head injuries.

This testimony was offered as a description of course material Walden had taken at college. If, as asserted by the State, Shirer was a fact witness testifying only about what he taught in the bicycle course, then the State must present connecting facts to show that Shirer taught Walden the material in order to establish the relevancy of the testimony. Rules 104(b), 401, M.R.Evid. The testimony indicated, however, that Shirer did not remember Walden; nor did he recognize Walden after he was pointed out in the courtroom. Furthermore, Shirer testified that some of the material may have been taught in optional classes that Walden had not attended. Under these circumstances, the testimony was not relevant under Rule 401, M.R.Evid., and therefore, was not admissible under Rule 402, M.R.Evid.

In any event, a nonexpert witness is generally limited to testifying to matters of fact. Estate of Smith (1988), 230 Mont. 140, 749 P.2d 512. Shirer's testimony had very little factual substance. Shirer's reference to tossing a cantaloupe into the air and watching it hit the ground is not factual testimony. Simply because this is material Shirer lectured on in his classes does not

17

make it factual testimony. The thrust of the testimony was not the fact that he taught this material, but rather the material itself; and this material was, to a large extent, Shirer's opinion. A lay witness' opinion must be helpful to a clear understanding of his testimony or the determination of a fact in issue. Rule 701, M.R.Evid. The descriptive picture painted by Shirer's testimony failed to serve either of these purposes.

For these reasons, we find the District Court erred in allowing Shirer to testify to the extent he did. The error did not prejudice the appellant, however, since the evidence went only to the question of damages and the jury decided the case solely on the question of liability.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice William E. Hunt, Sr., dissenting.

I dissent from the majority's opinion and would remand this case to the District Court for a new trial. The majority opinion considered five issues on appeal. I would reverse on Issues II, III, and V.

## ISSUE II

Appellant contends the District Court's offering, over objection, of Jury Instruction No. 39 regarding the practicability and cost of highway construction and maintenance, constituted reversible error. I agree.

The instruction at issue read as follows:

> A public entity is not liable for injury caused by a dangerous condition of its property of which it had actual or constructive notice if it establishes that the action taken to protect against the risk of injury created by the condition or the failure to take such action was reasonable.

> In determining whether it was reasonable, you shall consider the time and opportunity the defendant had to take action and weight [sic] the probability and gravity of potential injury to persons the defendant should have foreseen might be injured against the practicability and cost of protecting against the risk of such injury. [Emphasis added.]

In essence, this instruction provides the State with a financial feasibility defense. This Court has previously held such a defense is not available to the State. State ex rel. Byorth v. District Court (1977), 175 Mont. 63, 572 P.2d 201. Byorth indicated that such a defense was never available to a private party and should not be available to the State. The financial

19

feasibility defense has been before this Court on two occasions subsequent to Byorth. Modrell v. State (1978), 179 Mont. 498, 587 P.2d 405; Townsend v. State (1987), 227 Mont. 206, 738 P.2d 1274. In both decisions, this Court reaffirmed the Byorth holding. The following instruction, which was given in the present case as Instruction No. 27, was approved of by this Court in both Modrell and Townsend:

> If you find that Defendant State of Montana was negligent in planning, construction, signing or maintaining the highway in question, you may not excuse the State's negligence on the ground that proper maintenance or lack of sufficient employees was beyond the financial means of the State of Montana. Lack of adequate funds or an adequate number of employees is not a factor in the duty of the State to plan, construct, sign or maintain its highways in a reasonably safe condition. [Emphasis added.]

Neither Modrell nor Townsend dealt with a jury instruction similar to Instruction No. 39. However, in both cases the issue of a financial feasibility defense was raised at trial, contrary to our holding in Byorth. First in Modrell, then in Townsend, this Court apparently approved the introduction of evidence concerning the financial feasibility of various alternative courses of action by the State. The Court indicated that although Byorth was still the law in Montana, cost could be considered in the jury's determination of the reasonableness of the State's action in constructing and maintaining its highways. It was this language upon which the District Court understandably based its decision to give the respondents' requested instruction concerning cost and

practicability, resulting in the clearly contradictory instructions before the jury. Thus, the jury was told on the one hand that cost or financial feasibility was not a defense to any negligence by the State, while at the same time they were instructed to consider cost in determining if the State's actions were reasonable, i.e., negligent or not negligent. As Justice John C. Sheehy correctly pointed out in his dissent in Modrell:

> I am also of the opinion that there is an irreconcilable conflict between the holding in the majority opinion and our holding in the Byorth case. In Byorth, this Court stated if the State failed to discharge its duty to construct reasonably safe highways, and that failure resulted in injury, the State was liable "regardless of [its] personal financial priorities." 572 P.2d at 203. Yet here we are stating that financial priorities are a "factor" in determining negligence. Thus we now accord the State what was condemned in Byorth, "a defense a private party never had." 572 P.2d at 203.

Modrell, 587 P.2d at 410.

Faced with these contradictory instructions given by the trial court there was no way for the jury to determine if cost was or was not a proper factor for their consideration in determining if the State was negligent. I am persuaded this Court's original analysis set forth in Byorth was correct and that financial feasibility should not be a factor in determining whether the State planned, constructed, or maintained its highways in a negligent manner.

### ISSUE III

The third issue considered by the majority concerned the District Court's refusal of appellant's challenge for cause of a prospective juror. I accept the majority's decision that the

21

proper standard of review in this situation should be a clearly erroneous standard. However, even when reviewing the trial court's decision under this standard, which requires this Court to defer to the decision below unless clearly erroneous, I would reverse on this issue.

The Montana Constitution, art. II, § 26, guarantees the right to a jury trial, and as we have previously stated "[c]oncomitant with that right is the right to a fair and impartial jury." Mahan v. Farmers Union Central Exchange (1989), 235 Mont. 410, 418, 768 P.2d 850, 855. A prospective juror who has demonstrated "an unqualified opinion or belief as to the merits of the action . . ." is subject to a challenge for cause. Section 25-7-223(6), MCA. Additionally, the statute provides that a challenge for cause is proper in light of statements by the prospective juror "evincing enmity against or bias in favor of either party." Section 25-7-223(7), MCA.

The statements made by the prospective juror in this case clearly fall within the statutory criteria for excluding a juror for cause. Even after attempted rehabilitation, the juror was only able to say that he _thought_ he could be impartial and follow the law. This is clearly insufficient. After appellant's challenge for cause, the prospective juror continued to demonstrate enmity against appellant's action and bias in favor of the State. Appellant was entitled to have this juror dismissed for cause in light of the juror's candid admissions of an unqualified opinion

22

and belief as to the merits of the action. Appellant was forced to use a peremptory challenge to disqualify the juror. Appellant used all of his peremptory challenges.

The majority correctly points out that it is reversible error when the trial court, in an abuse of discretion, fails to properly dismiss a juror for cause. Abernathy v. Eline Oil Field Services, Inc. (1982), 200 Mont. 205, 216, 650 P.2d. 772, 778. This principle is unaffected by the majority's adoption of the clearly erroneous standard in place of the abuse of discretion standard. I would reverse on this issue.

### ISSUE V

I agree with the majority's analysis of the testimony offered by respondents' witness, Shirer, inasmuch as the majority found the testimony was error. However, the testimony in question was extremely prejudicial and I would, therefore, reverse and remand for a new trial.

_____
Justice

I concur with the foregoing dissent of Justice Hunt.

_____
Justice

23