No. 84-504

IN THE SUPREME COURT OF THE STATE OF MONTANA

1986

---

TAMELA BUCK, ALICE KEYS, KELLY KEYS, JOHN
A. BUCK and DOROTHY J. BUCK, Individually
and as personal representatives of the estate
of ELIZABETH RUTH BUCK, deceased,

Plaintiffs and Appellants,

-vs-

STATE OF MONTANA, a body politic
and MADISON COUNTY, a political
subdivision of the State of Montana,

Defendants and Respondents

---

APPEAL FROM:   District Court of the Fifth Judicial District
of the State of Montana, In and For the
County of Madison,
The Honorable Frank M. Davis, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Corette, Smith, Pohlman & Allen; Dolphy Pohlman,
Butte, Montana, Argued
Hash, Jellison, O'Brien & Bartlett; James C. Bartlett,
Kalispell, Montana, Argued

For Respondent:

John H. Maynard and Daniel Hoven, Argued for
The State of Montana

Harrison, Loendorf & Poston; James T. Harrison, Jr.
Helena, Montana, Argued for Madison County

---

Submitted:   May 15, 1986

Decided:   August 4, 1986

Filed:   AUG - 4 1986

_Ethel M. Harrison_
Clerk

Mr. Justice John C. Sheehy delivered the Opinion of the Court.

This is an appeal by each of the plaintiffs above named from a judgment entered against them and in favor of the State of Montana and the County of Madison after jury trial in the District Court, Fifth Judicial District, Madison County.

On August 30, 1980, at approximately 2:15 o'clock a.m., Tamela Buck, Alice Keys, Kelly Keys and Elizabeth Ruth Buck were traveling in a 1973 Volkswagon from Whitehall to their home on the South Boulder River in Madison County, Montana. A single car accident occurred at that time approximately one mile southeast of Cardwell on Highway 359 in Madison County. The driver, Kelly Keys, was injured as were two passengers, Alice Keys and Tamela Buck. A third passenger, Elizabeth Ruth Buck, died from injuries received from the accident.

Kelly Keys, Alice Keys, and Tamela Buck filed separate actions against the State of Montana. Later the three plaintiffs filed a consolidated amended complaint naming the State of Montana and the County of Madison as defendants.

In 1983 John A. Buck and Dorothy J. Buck, individually as parents and as personal representatives of the estate of Elizabeth Ruth Buck, deceased, filed a complaint against the State of Montana, and County of Madison. By later stipulation, all of the plaintiffs' cases were consolidated for trial in Virginia City, Montana.

Highway 359 was a secondary highway owned by the State of Montana on the date of the accident. The section of highway where the accident occurred was subject to a

- 2 -

maintenance agreement between the State of Montana and Madison County.

The principal issue of fact in this case was what caused the accident. The plaintiffs each contended that the section of roadway where the accident occurred was curved and that there was no curve sign or other warning of the upcoming curve presented to the driver of the Volkswagon. They contend that instead of following the curve, because of the lack of warning, the driver drove in a straight direction off the left side of the highway, corrected to get back on the highway surface and then the Volkswagon collided with a wooden railing bridge. A shaft or timber from the wooden bridge came through the Volkswagon, pinning the passengers in the rear seat, and apparently causing the death of Elizabeth Ruth Buck. The plaintiffs attack the construction of the bridge as unsafe.

The plaintiffs contended that the State of Montana had a legal duty to design and construct Highway 359 in a reasonably safe condition for motorists and that it failed such legal duty; that the County of Madison had the legal obligation to maintain Highway 359 in a reasonably safe condition at the time of the accident and it failed its contractual duty; and that these factors were a proximate cause of the injuries suffered by the four persons in the Volkswagon.

The State and County contended that there was no breach of legal duty in the design or construction; that they maintained the highway in a reasonably safe condition at the time; that the driver of the vehicle Kelly Keys had a statutory duty to drive upon the right side of the roadway and not to drive while under the influence of alcohol; that

the driver failed to keep a lookout and that her breaches of statutory and common law duties were the sole proximate cause of the accident from which the injuries to all plaintiffs arose. The State and County further contended that the passengers other than the driver had a duty to protect themselves from unreasonable risk of harm and that by occupying the vehicle with a driver known to them to have been drinking they breached that duty, were contributorily negligent, and proximately caused their own injuries.

The evidence adduced by the plaintiffs indicated on the evening before the accident they had gone into Whitehall to a bar at the Borden Hotel to join friends already present. It was Saturday evening of a Labor Day weekend. The parties had some beers and danced. About 1 a.m. Kelly Keys and Alice Buck went to an adjoining restaurant to eat a hamburger and drink coffee. As the bar closed they purchased a six pack of beer to take home. Kelly had stopped drinking, and had consumed in all 2½ bottles of beer. They left the bar at about 2 a.m. and proceeded to the place were the accident occurred.

The accident site had been designed and constructed in 1957 by the State of Montana. The roadway in that section proceeds directly east for about a half a mile before entering a sharp right hand curve at the end of the straightaway. Half way through the right hand curve was a wooden bridge with wooden railings on each side. A "curve sign" had been designed for the curve and had at one time been placed at that location, but on the night of the accident the warning curve sign was missing.

At the curve, the Volkswagon went straight ahead, crossed the center line and smashed into the left bridge

abutment. After the impact, Kelly was injured but able to get out of the vehicle and find help from a neighboring family. Alice and Tamela were both injured and had to be removed by Allen Pochelon. All were taken to the St. James Community Hospital in Butte from the Pochelon residence. Elizabeth Ruth Buck died while in the vehicle and her body was removed and taken to the mortuary at Ennis, Montana.

The State contended this accident was a result of the drinking by Kelly Keys, the driver. The State and County contended that the evidence showed that Kelly Keys lost control of the automobile, drifted across the middle of the road to the left hand side and went off the paved surface of the road 105 feet 11 inches before the final resting place of the vehicle. The highway investigating officer testified that no evasive action was taken until immediately prior to the impact. At one time the automobile was off the paved surface and on the gravel shoulder so that its right rear wheel was away from the paved road a distance of four feet six inches.

The nurse who accompanied the ambulance testified that Kelly Keys was under the influence of alcohol; she testified that Kelly Keys interfered with the performance of her duties and needed restraining. A blood alcohol test was taken in the hospital at 6 a.m. of Kelly Keys. It showed a .07 blood alcohol content at the time. Dr. Kenneth H. Mueller testified that for such a blood alcohol content to exist at 6 a.m., following the accident, "her blood alcohol would have to have been .11 to .15" at 2 a.m. He testified that Kelly Keys must have consumed six, perhaps as high as ten drinks. He said it was impossible to have a .07 blood alcohol result from 2½ bottles of beer 3½ hours before the blood test.

Contrary evidence on the intoxication of Kelly Keys was had from John Buck, the father of Elizabeth Ruth Buck, who talked to Kelly Keys at the hotel in Whitehall just before she left to drive the Volkswagon. From his close observation, she did not appear intoxicated to him. Mr. Buck later drove his automobile down the same roadway, and testified that there was no warning curve sign along the road's edge and that he himself had nearly run off the road before he realized he was approaching a curve.

Other contra evidence on intoxication came from Allen and Debbie Pochelon. They occupied a house a distance from the site of the accident. Following the impact, Kelly Keys got out of her automobile, and went back on the highway towards the Pochelon residence. There she banged on the door, and both Allen and Debbie observed Kelly Keys, her head covered with blood, hysterical, but in their opinion there was no indication of any intoxication or drinking. Kelly Keys remained at the house until the ambulance came. The other two passengers also came to the Pochelon residence. The Pochelons saw no evidence of drinking in the other two passengers.

Issues of fact were submitted to the jury on a special verdict devised by the District Court. In the first two issues, the jury determined that the State of Montana was negligent, but that its negligence was not a proximate cause of the accident. In issues 3 and 4, it also found that Madison County was negligent, but that its negligence was not a proximate cause of the accident. Under the form of the verdict as submitted, they having so answered the questions, none of the other issues of fact was decided by the jury, whose foreman signed the verdict form which was returned to

the Court. On the basis of the special verdict, the District Court entered judgment in favor of the State and of the County.

Assignments of error raised by the appellants include instructional error in refusing to instruct on concurrent cause; and evidentiary error in refusing to allow evidence of subsequent improvements to Highway 359; excluding the opinion of a witness as to the effect on the driver of the missing curve sign; and admitting evidence that the driver was not wearing a seat belt. It is also contended by appellants that the court erred in instructing the jury that it was unlawful for a person to drive a motor vehicle while under the influence of alcohol.

INSTRUCTIONS

The principal problem in this case lies in instructions given and not given to the jury by the District Court.

Here we have a case of an injured driver suing the State and the County for injuries that she claims were brought about by the negligence of the State and the County. Her case was consolidated for trial with the separate actions of three passengers in her automobile who also sued the State and the County for their claimed negligently caused injuries. The rules that permit recovery by an injured driver from negligent actors are different from those applying to non-drivers in the same automobile who seek damages from the same negligent actors. The instructions as given do not set forth those differences.

Although the State is not an insurer of one who uses the highways, State ex rel. Bjord v. District Court (1977), 175 Mont. 63, 67, 572 P.2d 201, 203, it is under a duty to keep

its highways in a reasonably safe condition for the ordinary use thereof.

The State's duty extends to the paved portion of the roadway, and to the shoulders and the adjacent parts thereof, including guard rails, or bridge abutments, Cech v. State (1979), 184 Mont. 522, 604 P.2d 97, as it is common experience that vehicles may stray or swerve from the usual traveled portion thereof. 39 Am.Jur.2d 886 Highways, Streets, and Bridges § 488.

It is the further duty of the State to construct and maintain its highways so that no latent nor hidden defect or trap thereon constitutes an unreasonable danger to persons and vehicles, including those portions of the highway where it may reasonably be foreseen that vehicles might traverse though off the paved portion of the highway. 39 Am.Jur.2d 887 Highways, Streets, and Bridges § 489.

These duties apply whether the defect occurs in the original construction, or later through repair, reconstruction, resurfacing or maintenance. Beeman v. State (1968), 29 A.D.2d 1040, 289 N.Y.S.2d 263.

When defects are present the State's duty to cure or remove the same, or give warning thereof begins when it has notice of the same and opportunity to act. Cameron v. State of California (Cal. 1972), 497 P.2d 777; Parfait v. State Department of Highways (Louisiana 1976), 334 So.2d 549.

The duty of the County in this case, under its maintenance contract with the State, was so to maintain the highway as to reasonably protect the traveling public, including the maintenance and upkeep of highway warning signs. The County had no duty with respect to the original construction and design of the highway.

The pertinent duties of the driver Kelly Keys in this case included the duty to keep a lookout, to keep her automobile under control, and to operate the same at a reasonable speed under the circumstances. She had a further duty not to drive her vehicle if she were under the influence of alcohol.

Different rules from those of the driver govern the passengers in this case. The negligence, if any of Kelly Keys in driving the Volkswagon, cannot be imputed to the passengers in the car. The negligence of Kelly Keys in driving and operating the automobile would be no bar to recovery by the passengers from the State and the County if the State and County proximately caused the injuries to the passengers. The default of a driver in disobeying statutory provisions regarding the operation of the automobile cannot by imputation be made the default of a passenger. Kudrna v. Comet Corporation (1977), 175 Mont. 29, 572 P.2d 183; Hernandez v. Chicago Burlington and Quincy Railway Company (1965), 144 Mont. 585, 398 P.2d 953; Wolf v. Barry O'Leary Inc. (1957), 132 Mont. 468, 318 P.2d 582.

If however a passenger agrees to ride in an automobile with a person he feels to be intoxicated and an unsafe driver, the passenger then assumes the risk, under our law a form of comparative negligence, and if the County and the State were also negligent, the case of the passenger would call for comparison and apportionment of the damages. Johnson v. United States (U.S.D.C. Mont. 1980), 496 F.Supp. 597, affd. 704 F.2d 1431.

Having the foregoing principles in mind, we append in the footnote below all of the instructions given by the court in this case on negligence.[1] It will be seen that the

---

1    Instructions relating to negligence issues given by the Court follow:

INSTRUCTION NO.    2

The instructions of the Court apply to all parties to the litigation unless otherwise specifically stated in the particular instruction.

INSTRUCTION NO.    9

You are instructed that the "proximate cause" of an injury is that cause which in the natural and continuous sequence, unbroken by any new and independent cause, produces the injury, and without which it would not have occurred. There may be more than one cause of an injury.

INSTRUCTION NO.    10

You are instructed that the State of Montana has a duty to construct and maintain its highways in a reasonable, safe condition for public use; however, this does not make the State an insurer of the highways.

This duty of the State to construct and maintain roadways is subject to realistic, viable, and state-of-the-art limitations.

INSTRUCTION NO.    11

The State is not required to undertake reconstruction of a highway simply because standards for highway construction have changed since the highway was originally constructed.

INSTRUCTION NO.    12

You are instructed that the County of Madison had a duty to reasonably maintain Highway 359 on the date of the accident and before.

INSTRUCTION NO.    13

You are instructed that Madison County has no responsibility for the original design or construction of the road or bridge involved in this matter.

INSTRUCTION NO.    14

You are instructed that it is unlawful for any person who is under the influence of alcohol to drive or be in actual physical control of a motor vehicle upon the highways of this State.

instructions contain no proper mention of comparative negligence, concurrent cause, or in the case of the passengers, imputed negligence.

---

INSTRUCTION NO.   15

Whether a person involved in an accident was then intoxicated or under the influence of intoxicating liquor is a question for the jury to consider in determining whether he was negligent.   In making this determination, the question to be answered is whether as a result of drinking intoxicating liquor the individual's physical or mental abilities were impaired so that he was unable to conduct himself with the caution of a sober person of ordinary prudence under the same or similar circumstances.

One is not necessarily intoxicated or under the influence of intoxicating liquor as a result of taking one or more drinks.   The circumstances and the effect must be considered.

Intoxication is no excuse for failure to act as a reasonably prudent person would act.   A person who is intoxicated or under the influence of intoxicating liquor is held to the same standard of care as a sober person.

INSTRUCTION NO.   15B

You are instructed that if a reasonably prudent person would not be able to detect a driver's intoxicated state, then that person cannot be denied recovery against the Defendants on the basis of contributory negligence.

INSTRUCTION NO.   16

Every person operating or driving a vehicle of any character on a public highway of this state shall shall drive the same in a careful and prudent manner, and at a rate of speed no greater than is reasonable and proper under conditions existing at the point of operation, taking into account the amount and character of traffic, condition of brakes, weight of vehicle, grade and width of highway, weather conditions, including the condition of the roadway surface, and freedom from obstruction of the view ahead, so as not to unduly or unreasonably endanger the life, limb, property, or other rights of any person entitled to the use of the street or highway.

INSTRUCTION NO.   17

The driver of a motor vehicle is presumed to see that which he could see by looking.   He will not be permitted to say that he did not see what he must have seen had he looked. The duty to keep a lookout includes a duty to see that which is in plain sight.

(Because all of the offered instructions in this case related to proximate cause, we leave aside from this discussion whether the jury should have been instructed on

-------

INSTRUCTION NO.  18

Violation of a statute enacted for the safety of the public is negligence.  However a violation of law is of no consequence unless it was a proximate cause of the injuries sustained.

INSTRUCTION NO.  19

You are instructed that Montana law requires as follows: Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway.

INSTRUCTION NO.  20

Negligence is the doing of something which a reasonably prudent person would not do, or the failure to do something which a reasonably prudent person would do, under circumstances similar to those shown by the evidence.

It is the failure to use ordinary or reasonable care.

Ordinary or reasonable care is that care which persons of ordinary prudence would use in order to avoid injury to themselves or others under circumstances similar to those shown by the evidence.

INSTRUCTION NO.  21

You are instructed that if you find that either of the defendants were negligent, before either of the defendants can be held liable for the plaintiffs' damages, you must find that defendants' negligence was a proximate cause of the plaintiffs' injuries and resulting damages.

INSTRUCTION NO.  22

You are instructed that if you find negligence to have been present on the part of either or both Defendants, this test to determine if it was a proximate cause is to be applied:  Did the wrongful act, in a natural continuous sequence of events, which might reasonably be expected to follow, produce the injury?  If so, it is a concurring proximate cause of the accident even though the later negligent act of another cooperated to cause it.
On the other hand, if the later act of negligence in causing the accident was of such a character as not reasonably to be expected to happen in the natural sequence of events, then such later act of negligence is the independent, intervening cause and therefore the sole proximate cause of the injury.

- 12 -

the basis of legal cause rather than proximate cause. For a discussion of legal cause and its application to this type of case, see Rudeck v. Wright (Mont. 1985), 709 P.2d 621, 628, 42 St.Rep. 1380, 1388; and Streich v. Hilton-Davis (Mont. 1984), 692 P.2d 440, 450, 41 St.Rep. 2310, 2322 (Morrison, J, concurring.)

Instruction No. 22, given by the court in this case (fn. 1 at P. 11) speaks of concurring proximate cause. Undoubtedly the jury followed this instruction, because although it found both the State and the County negligent, it determined that such negligence was not a proximate cause of the injuries here. Court's Instruction No. 22 comes from Halsey v. Uithof (1975), 166 Mont. 319, 327, 532 P.2d 686, 690, as repeated in Giles v. Flint Valley Forest Products (1979), 179 Mont. 382, 389, 588 P.2d 535, 539. Instruction No. 22 in this case is defective because it doesn't take into account that the negligence of the State and the County in this case, if it existed, was a continuing state of

---

INSTRUCTION NO. ___22A___

The negligence of a deceased plaintiff is attributable to the parents of the deceased.

INSTRUCTION NO. ___23___

Although there are two defendants in this action, it does not follow that if one is liable, both are liable. Each defendant is entitled to a fair consideration of his own defenses and is not to be prejudiced by any finding that you may make against the other. Except as otherwise indicated, all instructions given to you govern the case as to each defendant.

INSTRUCTION NO. ___24___

You are instructed that you are not to consider any testimony with respect to seat belts in your deliberation of this of this case (sic). The failure to use seat belts is not a proper defense under the laws of the State of Montana.

negligence which did not end at the moment that the Volkswagon veered from the paved roadway. In this case, the negligent conduct of the State and the County, as found by the jury, necessarily created or increased a foreseeable risk of harm through the intervention of another force, by failing to maintain a curve sign on the roadway, and by maintaining a dangerously unprotected wooden bridge. As the Federal District Court stated in Deeds v. U.S. (U.S.D.C. Mont. 1969), 306 F.Supp. 348, where the negligent conduct of an actor creates or his action increases the risk of particular harm and is a substantial factor in causing that harm, the fact that the harm was brought about through the intervention of another force does not relieve the actor of liability except where the harm is intentionally caused by the third person and is not within the scope of the risk created by the actor's conduct. Court's Instruction No. 22 improperly allowed the jury to determine that the driving of the vehicle by Kelly Keys was the sole proximate cause of the injuries received by her and her fellow passengers without giving consideration to the continuing nature of the negligence of the County and the State to and through the time of the accident. If the jury found that the curve sign was missing, or that the bridge was improperly protected, or both, it is idle to argue that direct injuries resulting from such conduct is not foreseeable, or "not reasonably to be expected to happen in a natural sequence of events." Otherwise there would be no necessity for curve signs or for bridge protection.

For that reason alone, we must reverse this case. There are however other factors in the instructions that deserve comment.

- 14 -

Since 1975, it has been the law in this State that contributory negligence does not bar recovery in an action by any person or his legal representative to recover damages for negligence resulting in death or injury to person or property if the contributory negligence was not greater than the negligence of the person against whom recovery is sought. In such case the damages are diminished in proportion to the amount of negligence attributable to the person recovering. Section 27-1-702, MCA.

Under that statute, it is the duty of the trial court, where there is evidence supporting the negligent acts of both the plaintiff and the defendant to instruct the jury on comparative negligence. This is because a party is entitled to instructions adaptable to his theory of the case, Meinecke v. Skaggs (1949), 123 Mont. 308, 213 P.2d 237, and "trial by jury" requires that all material issues of the fact be submitted to and determined by the jury. Dasinger v. Andersen (1959), 136 Mont. 277, 347 P.2d 747.

In like manner, the jury should have been instructed that the negligence of the driver in this case, if any, was not to be imputed to the passengers riding with her. Further, if sufficient evidence existed in the record to show that in the exercise of ordinary care the passengers should not have entered the automobile because of the intoxication of the driver, the jury should be so instructed as a separate issue of negligence involving the passengers. Once again, if the jury were to find the passengers negligent in that manner, such negligence would again have to be compared with the negligence of the defendant State and County.

RULINGS ON EVIDENCE

- 15 -

The bridge on which this accident occurred was constructed in 1957. Its width was no wider than the paved surface of the roadway approaching it. The sides of the bridgework were constructed of wood railings attached to wooden uprights. The railings ran the length of the bridge. The stringers or railings consisted of two 2x10s or 2x8s bolted together and bolted to the uprights. Thus the butt end of the stringers presented an area of 4x8 inches or 4x10 inches. It was the butt end of one of these stringers that entered the Volkswagon automobile into and over the backseat of the Volkswagon. There were no guard rails guarding the approach to the bridge itself.

Sometime after the date of the accident on August 30, 1980, and while this litigation was going on, the State of Montana improved the approach to the bridge and the bridge itself by placing steel approach guard rails and a steel bridge railing across the bridge. The briefs of the defendants indicate the highway reconstruction took place in 1981, several months after the accident in question. It is also stated in the State's briefs that the reconstruction was planned prior to the accident and not in response to the accident nor to any other accident. The State made a motion *in limine* that the Court hold inadmissible any evidence or offered evidence relating to the subsequent improvement project on the highway.

The Court granted the motion *in limine*, subject to the reservation that the evidence "might be admissible for impeachment purposes."

Rule 407, Montana Rules of Evidence provides:

When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent

measures is not admissible to prove negligence or
culpable conduct in connection with the event.

This rule does not require the exclusion of
evidence of subsequent measures when offered for
another purpose, such as proving ownership,
control, or feasibility of precautionary measures,
if converted, or impeachment.

The plaintiffs called David Johnson, a highway
department engineer to the stand, who testified that prior to
August 30, 1980, it would have been feasible to use "W"-beam
steel rail for bridge railing and approach guardrail.
Thereafter the following colloquy occurred:

Q. But at the time of this accident on August 30,
1980, there was no such steel guardrail used either
across the bridge or at the entrances to the bridge
on the north or the south, isn't that correct?
A. At the time of the accident?

Q. At the time of the accident. A. Yes. Yes,
that's correct.

Q. Prior to the accident, and I know you've
reviewed a lot of records and a lot of plans, prior
to the accident, did the State of Montana ever plan
to change the guardrail and use approach guard rail
of the steel type on this particular bridge on 359?

An objection was made to the question, conference was
held in the chambers of the Court, where plaintiffs' counsel
made an offer of proof that Johnson would answer the question
in the affirmative and thereafter counsel would ask Johnson
why the planned improvements had not been made prior to the
accident, to which counsel did not know the answer.

The Court ruled that the question violated the motion in
limine and overruled the offer of proof.

Johnson had already testified that improving the bridge
and its approach by the use of W-beam steel railings was
feasible, so the Court was correct in refusing the offer of
proof and denying the question on that point. However, the
question went to two other issues of fact important in this

case, that is, notice of hazardous condition, if it was hazardous, and time and opportunity to act. The Court erred in denying the offer of proof and in not permitting the witness to answer the proposed question on those grounds. Such issues were an integral part of the plaintiffs' cases they should have been allowed to pursue the knowledge and opportunity of the state with respect to the condition, if it was a hazardous condition, of the bridge. Again the Court committed reversible error.

There are further reasons that were not raised by counsel that the evidence should have been permitted. Plaintiffs' expert engineer later testified that the use of W-beam steel railings was recommended in a document entitled "Highway Design and Operational Practices Related to Highway Safety, Second Edition, 1974." promulgated by the American Society of State Highway Officials. Defense counsel on cross examination of Lee elicited that a part of the text of the document stated "it is basically intended that the concepts included, seasoned with proper judgment should be applied after date of circulation of the book to the design of all new construction which could be reevaluated and modified as necessary without unreasonable rework or design effort."

On further cross-examination of Lee, the following occurred:

> Q. Do you know if that special report has been adopted by any organization for application on any highway system in the United States of America.
> A. I sure do not.
>
> Q. Do you know specifically, I take it, from that you know you don't know whether it's been adopted for any highway system in the State of Montana?
> A. That's right.

Thus the jury was given the impression, although it may not have been true in this case, that the state had not

adopted the steel guardrail standards when in fact they may have been in the plans then existing for reworking Highway 359.

Other evidentiary issues raised by appellants have been reviewed by us and we find no error with respect to the same. It is unnecessary to burden this opinion with their recitation.

The judgment as to each plaintiff is reversed and remanded for a new trial or trials.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

Mr. Justice L. C. Gulbrandson:

I concur in the result but not in all that is said in the majority opinion.

_____
Justice

- 19 -