No. 90-251

IN THE SUPREME COURT OF THE STATE OF MONTANA

1991

CHARLES L. HASH, Personal
Representative of the Estate
of MICHAEL M. SCOTT, and
DEBBIE JO SCOTT,

Plaintiffs and Appellants,

-vs-

THE STATE OF MONTANA,
a body politic,

Defendant and Respondent.

FILED

MAR 21 1991

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Leif B. Erickson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Kenneth E. O'Brien; Hash, O'Brien & Bartlett,
Kalispell, Montana

For Respondent:

John Maynard, Chief Defense Counsel, Tort Claims
Division, Dept. of Administration, Helena, Montana
I. James Heckathorn; Murphy, Robinson, Heckathorn
& Phillips, Kalispell, Montana

Submitted on Briefs: November 15, 1990

Decided: March 21, 1991

Filed:

Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

Plaintiffs, Charles L. Hash, personal representative of the estate of Michael M. Scott, and Debbie Jo Scott, appeal from a judgment entered against them and in favor of defendant, State of Montana, after a jury trial in the District Court of the Eleventh Judicial District, Flathead County, Montana. We affirm.

Plaintiffs raise the following issues:

1. Did the District Court err in denying plaintiffs' motions for a directed verdict and for judgment notwithstanding the verdict?

2. Did the District Court err in giving two jury instructions to which plaintiffs objected?

On September 22, 1984, an early fall storm commenced in the vicinity of Marias Pass. By September 24, nine and one-half inches of snow had fallen. The snow that accumulated on U.S. Highway No. 2 was plowed by the Montana Highway Department maintenance crew. Plowing deposited a berm of snow on the edge of the roadway under the guardrail at milepost 194.4. The road at this point is curved and traverses uphill from west to east at approximately a four and one-half percent grade. The curve has an approximate three percent downhill slope from south to north. Narrow canyon walls shade the area until late in the morning and again late in the afternoon.

On Monday, October 1, 1984, a United States Forest Service pickup driven by Johnny Flagget was eastbound on his way toward the top of Marias Pass. At approximately 8:55 a.m., when the Flagget vehicle entered the curve at milepost 194.4 it struck a patch of

black ice, spun out of control, crossed the centerline and collided with a westbound automobile driven by Michael Scott. Mr. Scott was killed and his wife Debbie, a passenger in the vehicle, was seriously injured.

At the time of the accident, black ice covered both east and westbound lanes of the highway and extended for several hundred feet. The ice was immediately opposite and downhill from the snow berm which was four inches thick on the morning of the accident and located on the high side of the curve. The section of the highway where the curve is located was not patrolled by the maintenance crew that day nor was there any sand on the roadway or warning signs in the immediate vicinity of the accident. Investigators determined the ice formed when the snow berm melted during the day causing water to run across the roadway which then froze when the temperature dropped in the evening.

On July 14, 1987, plaintiffs filed a complaint in the Eleventh Judicial District Court, Flathead County, seeking to recover damages against the State. The complaint alleged that the State was negligent in maintaining or monitoring the highway near the accident scene. Trial commenced on November 22, 1989. Plaintiffs' motion for a directed verdict at the close of the State's evidence was denied and the jury found for the State. Plaintiffs then moved the court, pursuant to Rule 50(b), M.R.Civ.P., for judgment notwithstanding the verdict, or in the alternative, a new trial. The District Court denied this motion. Plaintiffs now appeal.

Did the District Court err in denying plaintiffs' motions for a directed verdict and for judgment notwithstanding the verdict?

The standard of review in an appeal from a denial of a motion for judgment notwithstanding the verdict made pursuant to Rule 50(b), M.R.Civ.P., is the same as that for review of a motion for a directed verdict, and a directed verdict may be granted only when it appears as a matter of law that the non-moving party could not recover upon any view of the evidence, including the legitimate inferences to be drawn from it. Wilkerson v. Sch. Dist. No. 15, Glacier Cty. (1985), 216 Mont. 203, 211, 700 P.2d 617, 622. This Court's function on appeal is to review the evidence in a light most favorable to the prevailing party to determine whether substantial evidence supports the jury's verdict. Sizemore v. Montana Power Co. (Mont. 1990), ___ P.2d ___, ___, 47 St.Rep. 2252, 2256. This Court cannot reweigh the evidence or disturb the findings of a jury unless that evidence is so inherently impossible or improbable as not to be entitled to belief. Sizemore, 47 St.Rep. at 2256.

Plaintiffs assert that the jury instructions, when related to the facts of the instant case, conclusively establish negligence on the part of the State which could not be overlooked by the jury. The District Court instructed the jury that the black ice at the accident scene constituted a hazardous condition and that when such a condition is created or maintained by the State, it is not necessary to show, as a condition precedent to liability, that the State had notice of the condition for a sufficient length of time

to remedy it. The court further instructed the jury that inherent in the State's duty of care, when the State knows or in the exercise of reasonable care should know of a hazardous condition, is the alternative duty to either eliminate the condition or to post adequate signs warning of the hazard if the condition cannot be immediately corrected. In determining whether the State exercised reasonable care the jury was instructed to consider all surrounding circumstances including the state of the art, the priorities set by the State, the methods of maintenance and practical alternatives.

The State is not an insurer of one who uses the highways. State ex rel. Bjord v. District Court (1977), 175 Mont. 63, 67, 572 P.2d 201, 203. However, the State is under a duty to keep its highways in a reasonably safe condition. Buck v. State (1986), 222 Mont. 423, 429, 723 P.2d 210, 214. The State's duty to keep its highways in a reasonably safe condition extends to the paved portion of the roadway, to the shoulders and the adjacent parts thereof, including guardrails, or bridge abutments. Buck, 222 Mont. at 429, 723 P.2d at 214. What constitutes a reasonably safe condition is generally considered to be a question of fact. Kaiser v. Town of Whitehall (1986), 221 Mont. 322, 327, 718 P.2d 1341, 1344; Limberhand v. Big Ditch Co. (1985), 218 Mont. 132, 144, 706 P.2d 491, 498.

In this case the accident occurred in an area which is part of a twenty-nine mile section of highway maintained by a four-member maintenance crew. Crew members testified the highway was plowed in the usual manner and it was inevitable that some snow

5

would be left on the shoulders of the roadway and under guardrails. There was testimony that snow along the shoulders of the roadway and under guardrails is common during the winter months on all Montana roads and that this does not, in and of itself, create a hazardous driving condition. Crew members also testified that there was no practical alternative to the way the snow was removed from the roadway due to the type of equipment available, risks to the travelling public, and the number of labor-hours required.

In support of their argument that the State was negligent plaintiffs point to the Highway Department's maintenance manual which prohibits plowing snow to the high side of a curve when possible. However, the jury was instructed that it was up to it to decide if violations of the maintenance manual constituted negligence on the part of the State under the circumstances presented. This is in accord with Townsend v. State (1987), 227 Mont. 206, 738 P.2d 1274, in which we held that violations of the maintenance manual is evidence of negligence but is not negligence per se.

The entire twenty-nine mile section of highway was patrolled by the maintenance crew during the work week immediately preceding the day of the accident. Testimony regarding the road conditions during this time was that by September 28 the road was bare and dry throughout the entire section. The maintenance crew took the weekend off. However, on Saturday, September 29, two members of the crew travelled over the road while off duty and did not see any wet or icy spots.

On the morning of September 30, an accident occurred at the

6

same site where the Scott accident was to occur the following morning. This accident was investigated by Highway Patrol Officer Vollrath. Plaintiffs argue that the State had notice of the existing icy conditions through Officer Vollrath's investigation of the accident. Officer Vollrath testified that when he arrived at the scene of the accident the roadway was icy and when he left it was wet. He did not notify the maintenance crew of the condition of the road because he did not believe there was a potential for danger. He stated the weather was warm enough that he did not need a coat and he believed that the water would evaporate off the highway. He further testified that during the eight years he was stationed at East Glacier he had often seen water on the roadway and snow under or over the top of the guardrails and that water on a corner does not necessarily constitute a hazard.

Anthony Babcock, acting crew foreman on the day of the accident, testified that the highway was not patrolled on that day because the weather had warmed up to a point where he felt a patrol was not needed. Arthur Little, maintenance superintendent, testified that the decision of whether or not to patrol the highway on a particular day is a judgment call based on the weather. The crew members all testified that before the accident they had never encountered the situation where only one curve of the highway was icy while the remainder of the section was bare and dry.

These facts rise to the level of substantial evidence required to support the jury's verdict. The evidence established a reasonable basis for which an honest difference of opinion could

arise on the question of negligence on the part of State under the circumstances presented. Accordingly, we hold the District Court did not err in denying plaintiffs' motions for a directed verdict and for judgment notwithstanding the verdict.

## II

Did the District Court err in giving two jury instructions to which plaintiffs objected?

Plaintiffs' first argument is directed to Instruction No. 23 which provides:

> You may not consider evidence of conduct of the State in patrolling the highway after October 1, 1984, as any evidence of negligence or culpable conduct on the part of the State.

Plaintiffs assert that testimony of subsequent patrol was introduced to impeach maintenance foreman Babcock's reason for failure to patrol on the day of the accident and the District Court erred in giving Instruction No. 23 in that it effectively advised the jury that it should not consider this evidence.

Rule 407, M.R.Evid., addresses subsequent remedial measures and states:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of evidence of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

It seems clear that patrolling the highway after the date of the accident was a measure which, if taken previously, would have made the accident less likely to occur. The District Court properly

8

instructed the jury that it could not consider this as evidence of negligence or culpable conduct on the part of the State. Although the testimony of subsequent patrol could not be considered as evidence of negligence or culpable conduct on the part of the State, it was admitted into the record and could be considered by the jury for another purpose. We hold there was no error in giving Instruction No. 23.

Plaintiffs next contend that the District Court erred in giving Instruction No. 14 and refusing plaintiffs' proposed Instruction No. 45. Instruction No. 14 reads as follows:

> The State of Montana is not an insurer of the safety of persons who use the highways.
>
> A state must exercise reasonable care to keep the highways over which it has exclusive control reasonably safe for travel.
>
> Inherent in the duty of reasonable care to be exercised by the defendant, State of Montana, when it knows or in the exercise of reasonable care should know of a hazardous condition, is the alternative duty either to eliminate hazardous conditions or to post adequate and appropriate signs to warn the travelling public of their presence if the conditions cannot be immediately corrected.

Plaintiffs argue the court erred in that this instruction submitted to the jury the issue of whether the State knew or, in the exercise of reasonable care, should have known of the hazardous condition. Plaintiffs maintain that under the facts established by the record the State created the condition and the highway patrol had knowledge of the condition; therefore, the State would be charged with notice as a matter of law. Plaintiffs' proposed instruction would have instructed the jury that under the facts of this case the State was presumed to have knowledge of the existing

9

icy conditions.

Jury instructions on appeal are to be viewed in their entirety and in light of the evidence presented. Pipe Indus. Ins. Fund Trust v. Consol. Pipe Trades Trust (1988), 233 Mont. 162, 168, 760 P.2d 711, 715. Our review of the jury instructions in their entirety shows that Instructions Nos. 18 and 21 sufficiently instructed the jury in accordance with plaintiffs' theory of the case. We hold there was no error in giving Instruction No. 14.

Affirmed.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

Justice William E. Hunt, Sr., dissenting:

I dissent. In denying the plaintiffs' motion for judgment notwithstanding the verdict or, alternatively, for a new trial, the District Court stated that it was "hard pressed to understand how the jury, under the facts and law presented, could have found for the [d]efendant . . . ." I, too, am hard pressed to understand such a verdict.

The District Court instructed the jury as follows:

INSTRUCTION NO. 19

You are instructed that the State should be held liable for any injuries or death caused by a dangerous condition existing on its highways where such dangerous condition was created by the State or its employees.

It was uncontroverted that the dangerous condition that caused the accident in this case was a patch of ice on the highway that was formed by snow melting from a snow berm located on the high side of a super elevated curve. It was also uncontroverted that the snow berm was created by state highway department employees when they plowed snow from the highway onto the high side of the curve, despite the fact that the highway department's maintenance manual specifically prohibited such activity.

The court also instructed:

INSTRUCTION NO. 18

You are instructed that where a hazardous condition exists on a highway and such hazard was created or maintained by the public authority it is not necessary to show as a condition precedent to liability that the public authority had notice of such condition for a sufficient length of time to remedy it.

11

This instruction charged the State with notice of the hazardous condition if the condition was created or maintained by the State. As I pointed out above, no one contested the fact that the State created the hazardous condition by plowing snow on the upper side of a super elevated curve. The highway department manual itself warned of the dangers that could result from plowing snow in this manner by providing:

> Snow should not be deposited or allowed to accumulate on the high side of super elevated curves, as this may cause a dangerous situation when the snow thaws. Water may run across the roadway, freezing as the temperature drops. All snow should be plowed from the upperside of the curves, when possible, to help avoid icy conditions.

Despite this provision in the manual, the State argued that it could not have foreseen the accident that occurred on this curve. As the saying goes, "Give me a break!"

The court further instructed the jury:

INSTRUCTION NO. 14

> The State of Montana is not an insurer of the safety of persons who use the highways.
>
> A state must exercise reasonable care to keep the highways over which it has exclusive control reasonably safe for travel.
>
> Inherent in the duty of reasonable care to be exercised by the defendant, State of Montana, when it knows or in the exercise of reasonable care should know of a hazardous condition, is the alternative duty either to eliminate hazardous conditions or to post adequate and appropriate signs to warn the travelling public of their presence if the conditions cannot be immediately corrected.

This instruction required the State, once it had notice of the hazardous condition, to exercise reasonable care by either eliminating the danger or posting warning signs. The instruction

12

provided that actual knowledge of the danger was not required, that constructive knowledge was adequate. As I pointed out above, the highway department manual put the crew members on notice of precisely the type of hazard created by snow piled along the side of a super elevated curve. Even though it may not have been possible to remove the snow berm, as the crew members testified, the instruction mandated the State to warn the public that the hazard existed. Having failed to warn, the State was liable for the accident.

The jury was also instructed:

INSTRUCTION NO. 21

Where the highway patrol discovers a hazardous condition, such as an icy road, and there is a reasonable possibility of impending danger to users of the highway, he has a duty to take precautionary methods to prevent such danger.

This instruction and the highway patrol officer's testimony were red herrings. Whether Officer Vollrath thought the area was hazardous is not at issue here because it has already been established that the State had either actual or constructive knowledge of the hazardous condition through the highway department employees who created the hazard.

The facts of this case and the instructions established that the State, through the highway department crew members, had a duty to the public to exercise reasonable care to keep the highways in a reasonably safe condition. The State breached this duty by creating a dangerous condition, a snow berm on a super elevated curve. The State was charged with the knowledge of this condition

13

because it created the condition. The foreseeability of the hazard was acknowledged by the highway department crew members as well as by the department manual. The State failed to either eliminate the hazard or post signs warning of the danger, thus incurring liability as a matter of law.

While we are required to give great deference to the jury's findings, there are times when the facts as applied to the instructions can lead to but one conclusion. Here, we have such a case. The evidence so overwhelmingly points toward the State's liability that any other conclusion can only be attributed to a misapplication of the law of the case.

I would reverse the District Court and remand for entry of judgment notwithstanding the verdict on the issue of liability and a new trial on the issue of damages.

_____
Justice

I concur in the foregoing dissent of Justice William E. Hunt, Sr.

_____
Justice

14