No. 92-283

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

ELROY C. YAGER and BARBARA A. YAGER,

      Plaintiffs and Appellants,

-vs-

ROLLAND DEANE, a/k/a ROLAND E. DEANE, JR.,

      Defendant and Appellant,

  and

THE STATE OF MONTANA,

      Defendant and Respondent.

APPEAL FROM:   District Court of the Eighteenth Judicial District,
In and for the County of Gallatin,
The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

            J. David Penwell, Attorney at Law, Bozeman, Montana
and John L. Weyland, Attorney at Law, Wayzata,
Minnesota (for appellants, Yagers)

            James M. Kommers and Daniel J. Roth; James M.
Kommers and Associates, Bozeman, Montana (for
appellant Deane)

      For Respondent:

            Allen B. Chronister; Chronister, Driscoll & Moreen,
Helena, Montana

            Kelly O'Sullivan, Agency Legal Services Bureau,
Helena, Montana

FILED

MAY 27 1993

Filed: *Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

Submitted on Briefs:   October 29, 1992

Decided:   May 27, 1993

_____
Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Plaintiffs Elroy and Barbara Yager and defendant Rolland Deane appeal from an order of the Eighteenth Judicial District Court, Gallatin County, granting summary judgment in favor of the State of Montana. We affirm.

The sole issue on appeal is whether the District Court erred in granting summary judgment on the basis that the State of Montana had no duty to prevent livestock from wandering onto the interstate highway.

The pertinent facts of the case are undisputed. On March 22, 1989, at approximately 1:30 a.m., Elroy Yager (Yager) was driving a semi-tractor and trailer in the westbound lane of Interstate 90 (I-90). Yager's vehicle struck a horse, owned by defendant Rolland Deane (Deane), that had wandered onto the highway near the Jackson Creek interchange east of Bozeman. As a result of the impact, the semi-tractor and trailer went through a guardrail and rolled down an embankment, injuring Yager.

On March 29, 1991, Elroy and Barbara Yager (the Yagers) filed suit against Deane and the State of Montana (the State). They alleged that Deane negligently allowed his horse to wander onto I-90 and that the State negligently maintained a fence and cattleguard, allowing the horse access to I-90. Elroy Yager sought damages for permanent bodily injury, medical expenses and lost wages. Barbara Yager sought damages for loss of consortium. Deane and the State filed cross-claims seeking indemnity and contribution from each other.

On April 24, 1992, the District Court granted the State's

2

motion for summary judgment. The District Court determined that actionable negligence could not lie against the State absent a legal duty to erect or maintain a fence or to keep the interstate highway free of livestock. It concluded that no such duty existed. The Yagers and Deane appeal.

Did the District Court err in granting summary judgment on the basis that the State of Montana had no duty to prevent livestock from wandering onto the interstate highway?

A district court properly grants summary judgment when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. Ordinarily, issues of negligence are issues of fact not susceptible to summary adjudication. Brohman v. State (1988), 230 Mont. 198, 201, 749 P.2d 67, 69. However, actionable negligence arises only from the breach of a legal duty; the existence of a legal duty is a question of law to be determined by the district court. Nautilus Insurance Co. v. First National Insurance (Mont. 1992), 837 P.2d 409, 411, 49 St.Rep. 802, 803. The question before us, as it was before the District Court, is whether the State has a legal duty on which appellants can base a negligence claim. We examine, in turn, the sources which appellants contend impose a duty on the State to prevent livestock from wandering onto I-90 where the accident occurred.

Statutory Basis

The District Court considered whether §§ 60-7-103 and 60-5-

3

105(1), MCA, required the State to prevent livestock from wandering onto the highway. Section 60-7-103, MCA, provides:

**Department to fence right-of-way through open range.** (1) The department shall fence the right-of-way of any part of the state highway system that is constructed or reconstructed after July 1, 1969, through open range where livestock present a hazard to the safety of the motorist. Where a fence is constructed, adequate stock gates or stock passes, as necessary, shall be provided to make land on either side of the highway usable for livestock purposes.

(2) The department shall erect a fence in every high-hazard area as promptly as possible, and the cost of such construction is an expenditure for the enforcement of federal-aid highway safety programs. Gates, stock underpasses, water facilities, and cattle guards may be installed where necessary to make the land on either side of the highway usable for livestock purposes or where a public right-of-way intersects the state highway.

The court determined that the area was not "open range" within the meaning of § 60-7-102(1), MCA, because it lies within a horse herd district. Furthermore, the segment of I-90 where the accident occurred is not a high hazard area as defined in § 60-7-102(2), MCA; the highway is not part of the primary highway system nor has the segment been designated as a high hazard area. As a result, the court determined that § 60-7-103, MCA, did not require the State to erect a fence along the interstate.

Section 60-5-105(1), MCA, provides in pertinent part:

**Design of controlled-access facility--entrance and exit restricted.** (1) Each highway authority may so design any controlled-access facility and so regulate, restrict, or prohibit access as to best serve the traffic for which the facility is intended.

The District Court determined that this provision was permissive, and therefore, did not impose a duty on the State.

Appellants do not contend that the District Court erred in

4

construing and applying §§ 60-7-103 and 60-5-105(1), MCA. Nor do appellants cite other statutory authority establishing a duty by the State to prevent livestock from wandering onto the interstate.

Deane contends, however, that once the State voluntarily constructs a fence along the highway right-of-way, as a controlled access facility under § 60-5-105(1), MCA, the State is required to exercise ordinary care in its construction and maintenance. The record reflects that the State did not "voluntarily" construct the fence. Rather, the State erected the fence along the interstate highway right-of-way as a precondition for receiving federal funds.

We have previously stated that § 60-5-105(1), MCA, provides that the State may—not shall—restrict or prohibit access. Big Man v. State (1981), 192 Mont. 29, 36, 626 P.2d 235, 239. In Big Man, we determined that the statute's permissive language did not require, or impose a duty on, the State to erect a fence to prevent access by pedestrians to a controlled access highway. While the specific facts on which our determination in Big Man was based are distinguishable, no provision in the statute imposes a duty to erect a fence for any purpose.

Deane cites Stewart v. Standard Publishing Co. (1936), 102 Mont. 43, 55 P.2d 694, to support his position that once the State constructs a fence under § 60-5-105, MCA, it owes a duty to the motoring public, who rely on the State's construction and maintenance of the fence.

> "[W]here a person undertakes to do an act or discharge a duty by which the conduct of another may be properly regulated and governed, he is bound to perform it in such a manner that those who are rightfully led to a course of

5

conduct or action on the faith that the act or duty will be duly and properly performed shall not suffer loss or injury by reason of negligent failure so to perform it."

Stewart, 55 P.2d 696, quoting 45 C.J. 650.

Even if the State's construction of the fence could be characterized as a discharge of Deane's duty to prevent the horse from wandering onto the highway, the rationale in Stewart provides no basis for imposing a duty on the State. Deane has not alleged or in any way established that in driving on the highway, Yager relied on the State's construction and maintenance of the fence to prevent livestock from gaining access. We conclude that §§ 60-7-103 and 60-5-105(1), MCA, do not impose a duty on the State to maintain the fence or prevent livestock from wandering onto the highway.

The State's General Duty to Keep Highways Reasonably Safe

The appellants did not assert before the District Court that the State's general duty to keep highways reasonably safe imposed a duty on the State relative to livestock. On appeal, however, they urge us to extend the State's general duty to include a specific duty requiring the State to prevent livestock from wandering onto the highway. Appellants rely on a number of sources for the State's general duty. They contend that the State is required to maintain the fence along the right-of-way under its general duty to keep the highways reasonably safe, citing Buck v. State (1986), 222 Mont. 423, 429, 723 P.2d 210, 214. The Yagers also base the State's general duty on its ownership of the right-

6

of-way. They contend that property owners, including governmental entities, have a duty to maintain their property in a reasonably safe condition, relying on Kaiser v. Town of Whitehall (1986), 221 Mont. 322, 718 P.2d 1341, and Limberhand v. Big Ditch Co. (1985), 218 Mont. 132, 706 P.2d 491. Additionally, Deane relies on State ex rel. Byorth v. District Court (1977), 175 Mont. 63, 572 P.2d 201, as a source for the general duty.

While we do not disagree that the State has a general duty to keep highways in a reasonably safe condition, we decline to expand that duty to impose a new duty to prevent livestock from reaching interstate highways. Montana has been, and continues to be, an open range state. See State ex rel. Martin v. Finley (1987), 227 Mont. 242, 738 P.2d 497. Under the open range doctrine, neither the State nor livestock owners have a duty to prevent livestock from wandering onto roadways. However, due to the increase in motor travel and in an effort to protect the motoring public, the Montana legislature has passed two carefully crafted exceptions to the doctrine. Id. The State Department of Highways is required to fence certain rights-of-way pursuant to §§ 60-7-101 et seq., MCA. Sections 60-7-201 et seq., MCA, make it unlawful for a livestock owner to allow livestock to graze or occupy certain rights-of-way. As discussed above, the District Court determined that § 60-7-103, MCA, did not impose a duty on the State to fence livestock off the highway on the facts before it; appellants do not argue otherwise.

In Martin, we declined to impose duties on a livestock owner which were not specifically created by the Montana legislature via

7

statutory provisions governing fencing of the open range. There, the State and others sought to enjoin livestock owners from allowing livestock to wander beyond their property. The plaintiffs claimed that the wandering livestock constituted a public nuisance pursuant to § 45-8-111, MCA, by interfering with the enjoyment of their property and posing a hazardous driving condition. We discussed the open range doctrine and set forth the statutory exceptions which impose liability on livestock owners for certain negligent conduct relating to their livestock and require the State to fence certain rights-of-way. We concluded that neither of the two "carefully crafted" statutory exceptions to the open range doctrine required the livestock owner to restrain his livestock and that case law imposed no such duty. Martin, 738 P.2d at 498-99. As a result, we declined to apply the general public nuisance statute to impose an additional duty not provided for in the specific open range provisions.

We reach the same result here. We decline to apply the State's general duty to keep its property in a reasonably safe condition, as articulated in Kaiser and Limberhand, or its general duty to keep its highways in a reasonably safe condition, as enunciated in Buck and Byorth, to specifically require the State to prevent livestock from wandering onto the interstate highway. Where the Montana legislature has acted to define the duty of the State relative to livestock on roadways, we will not impose an additional duty, the source of which is extraneous to the statutory provisions governing the fencing of the open range.

8

Appellants contend that the District Court misapplied Buck in determining that the State's general duty did not impose a duty on the State to maintain the fence. The court acknowledged that the State's general duty to keep highways in a reasonably safe condition extended to the paved portions of the roadway and to the shoulders and adjacent parts of the roadway under Buck. The court reasoned, however, that the fence was well off the paved or shoulder portions of the highway and, therefore, that the State had no duty to maintain it. We do not disagree with appellants' contention that the District Court failed to connect their argument on fencing to the "adjacent parts" language in Buck. However, we find no basis in Buck to impose a duty on the State to maintain the fence.

In Buck, the driver failed to negotiate a curve in the highway and went off the left hand side of the pavement. As the driver attempted to return the vehicle to the roadway, the vehicle collided with a bridge abutment. We concluded that the State's duty to keep its highways in a reasonably safe condition extended to the shoulders "and the adjacent parts thereof." Buck, 723 P.2d at 214. In relying on this language to support a duty by the State with regard to fencing, however, appellants fail to recognize that the extension of the State's general duty in Buck specifically was premised on the "common experience that vehicles may stray or swerve from the usual traveled portion" of the roadway. Id. Here, Yager did not stray from the usually traveled path and encounter an unreasonably unsafe condition on an adjacent part of the roadway.

9

Thus, the Buck language relied on by appellants is inapplicable here.

Finally, appellants assert that the District Court erroneously relied on Whitfield v. Therriault Corp. (1987), 229 Mont. 195, 745 P.2d 1126, and Ambrogini v. Todd (1982), 197 Mont. 111, 642 P.2d 1013, to support its determination that the State's general duty did not require it to prevent livestock from gaining access to the highway. Those cases are, indeed, distinguishable on their facts from the present case and, therefore, are not controlling on the issue of the State's duty to prevent livestock from wandering onto the particular roadway here. Whitfield and Ambrogini do reflect, however, our consistent refusal to impose a duty on the State or livestock owners relative to fencing livestock off roadways that is not specifically created by the legislature.

## Montana Department of Highways Maintenance Manual

Section 3.110 of the Montana Department of Highways Maintenance Manual provides:

> The major portion of the highway right of way has been fenced either by the adjoining landowner or by the state. The maintenance of this fence is detailed in the right of way agreement. On Interstate highways, however, the fence and its maintenance are the responsibility of the Department of Highways. Highway fences may be important as any other safety device on the highway and, thus, so are their maintenance. Placement of a fence not only outlines the limits of the right of way, but also keeps humans and animals away from hazardous areas. Careful inspection and routine maintenance should not be neglected.

The District Court ruled that the maintenance manual imposed no duty on the State to erect fences. The court determined that

10

violations of the manual provide evidence of negligence only after the existence of a legal duty has been established.

The Yagers make a dual argument relating to the manual. First, they argue that the manual affirmatively imposes a duty on the State to maintain the fence, relying on Townsend v. State (1987), 227 Mont. 206, 738 P.2d 1274, and Hash v. State (1991), 247 Mont. 497, 807 P.2d 1363. Neither Townsend nor Hash holds, or infers in any way, that provisions of the maintenance manual impose a duty.

Second, the Yagers assert that a violation of the maintenance manual is evidence of negligence and that negligence is a fact question for the jury, relying again on Townsend and Hash. On this basis, they argue that the District Court erred in granting summary judgment. Townsend and Hash do support the Yagers' contention that violations of the manual are evidence of negligence. Townsend, 738 P.2d at 1276; Hash, 807 P.2d at 1366. However, the cases do not preclude summary judgment in the present case.

The existence of a duty was not at issue in either Townsend or Hash; the State's general duty to keep highways in a reasonably safe condition was applicable to the facts of those cases. Under those circumstances, we concluded that proof of the State's failure to comply with the manual was evidence of negligence. Here, appellants have not established the existence of a legal duty by the State to erect or maintain fences along the interstate highway to prevent livestock from gaining access. Thus, the question of whether the State breached its duty, to which violations of the

11

manual as evidence of negligence properly could be addressed, simply does not arise in this case.

We conclude that the highway manual does not impose a duty on the State to maintain the fence. Absent the existence of a legal duty, the manual cannot be used as evidence that the State negligently maintained the fence.

Right-of-Way Purchase Agreement

The Yagers' final contention is that the State assumed a duty to maintain the fence when it purchased the right-of-way. In support of this contention, the Yagers appended documents entitled Highway Right of Way Easement and Agreement to Fence to their brief opposing summary judgment in the District Court, and to their brief to this Court. The District Court did not consider the appended documents; nor did it address whether the State assumed a duty to maintain the fence when it purchased the right-of-way.

The Yagers contend that the documents were properly before the District Court because they had been obtained from the Highway Department during discovery. However, when addressing a motion for summary judgment, a district court considers only discovery that is on file. Rule 56(c), M.R.Civ.P. The Yagers failed to file the documents; on that basis, the District Court's failure to address them or the issue for which they were appended was appropriate. We join the District Court in declining to address an issue lacking proper support in the record.

Appellants have failed to cite any authority imposing a duty

12

on the State to prevent livestock from wandering on, or to erect or maintain a fence along, the section of the interstate highway where the accident occurred. Absent a duty, there can be no negligence. We hold that the District Court did not err in granting the State's motion for summary judgment.

Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____
_____
Justices

13

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

Plaintiffs filed a complaint in which they alleged that the State of Montana had a duty to maintain fences and cattle guards which were built by the State on State property to protect motorists on Interstate 90 from wandering livestock. Plaintiffs alleged that the State was negligent by failing to maintain these fences and cattle guards and that plaintiff Elroy Yager was injured as a result of the State's negligence. The State denied that it was negligent in its answer. However, no evidence has been offered by the State, by affidavit or otherwise, which would controvert plaintiffs' allegation of negligence. The District Court's order of summary judgment, and this Court's opinion affirming that order, are based simply on the conclusion that the State had no duty to maintain its own property in a way that would prevent an unreasonable risk of injury to others.

The majority's conclusion is wrong as a matter of law for several reasons.

First, the State has the same duty that all private property owners have by statute in Montana to act reasonably in the maintenance of its property. Second, the State assumed a duty by adopting the Uniform Maintenance Manual which required that it erect and maintain the fences which were the subject of this suit. Finally, the State assumed the duty to build and maintain the fence and cattle guard in question when it accepted federal funding for the construction of Interstate Highway 90, and it agreed as a

14

condition to that funding to build and maintain the protective devices in question.

## DUTY TO EXERCISE ORDINARY CARE

Article II, section 18, of the Montana Constitution provides in relevant part that:

> The state . . . shall have no immunity from suit for injury to a person or property, except as may be specifically provided by law by a 2/3 vote of each house of the legislature.

Section 2-9-102, MCA, provides that:

> Every governmental entity is subject to liability for its torts and those of its employees acting within the scope of their employment or duties whether arising out of a governmental or proprietary function except as specifically provided by the legislature under Article II, section 18, of the Constitution of the State of Montana.

It is clear, then, that unless specifically prohibited by the Legislature, the State is liable to the same extent that a private individual would be liable for its negligence as defined in the common law. Under the common law of Montana, we have previously held that statutory obligations give rise to duties which, if breached, form the basis of a common law cause of action. For example, § 27-1-701, MCA, provides that:

> Except as otherwise provided by law, everyone is responsible not only for the results of his willful acts but also for an injury occasioned to another by his want of ordinary care or skill in the management of his property or person except so far as the latter has willfully or by want of ordinary care brought the injury upon himself.

In *Limberhand v. Big Ditch Company* (1985), 218 Mont. 132, 144-45, 706 P.2d 491, 498-99, we held that this statute imposed a duty on

15

land owners to use ordinary care in the management of their property so as not to create an unreasonable risk to those who could be foreseeably injured by their failure to do so. According to our Constitution and the statutory authority previously cited, the State had the same duty to maintain the fence and cattle guard that it constructed on the right-of-way that it owned. The majority opinion fails to discuss why the duty imposed by § 27-1-701, MCA, applies to every private person in this State, but not to state government itself.

HIGHWAY MAINTENANCE MANUAL

As pointed out in the majority opinion, the State of Montana's own highway maintenance manual provides that it is the State's responsibility to maintain fencing along interstate highways. The manual even points out exactly why it is important to maintain fences. It provides that "[p]lacement of a fence not only outlines the limits of the right of way, but also keeps humans and animals away from hazardous areas. Careful inspection and routine maintenance should not be neglected."

However, the majority dismissed the obligation created by the State's own maintenance manual by concluding that even though failure to comply with the maintenance manual is evidence of negligence, the manual did not create any duty.

It is true that we have specifically held that "violations of the Maintenance Manual provided evidence of negligence." *Townsend v. State* (1987), 227 Mont. 206, 209, 738 P.2d 1274, 1276. However,

16

it is a non sequitur to conclude that there can be evidence of negligence without a duty. We have previously held that a duty is a prerequisite for finding negligence. In *Roy v. Neibauer* (1981), 191 Mont. 224, 226, 623 P.2d 555, 556, we held that:

> It is an elementary principle of law that before a claim for relief can be made against a defendant for negligence, the existence of a duty by the defendant to the plaintiff must be shown, along with the breach of that duty and a resulting injury.

If there has to be a duty and a breach of duty before there can be a claim of negligence, how can failure to comply with the maintenance manual be evidence of negligence, but no basis for establishing a duty? In its effort to protect the State from accountability for its negligence in this case, the majority's opinion is logically inconsistent with the majority's previous decisions.

## DUTY UNDER FEDERAL LAW

The majority briefly reviews State statutory law which imposes a duty to fence highways, but concludes that since those statutes were not applicable to the area where this action occurred, there was no statutory duty imposed on the State to protect motorists on this highway from wandering livestock. However, I do not understand why the majority's review of statutory obligations is limited to state law. What rational distinction is there between state statutes which impose a duty to fence highways and federal statutes which impose the same duty?

The State of Montana concedes, in its appellate brief, that the area where this accident occurred was originally fenced and

17

protected by the State Highway Department because the State was required to do so by federal law. In its brief, the State concedes that:

> While state law is permissive regarding Interstate fencing, the primary if not exclusive reason that these highways are fenced is that fencing is required by the Federal government as a precondition for receiving critical construction funding. A complete discussion of the applicable Federal statutes and regulations would be complicated and lengthy and is unnecessary here. It is sufficient to note that Federal law requires states to comply with Federal standards for design (23 U.S.C. §§ 106 and 109), construction (23 U.S.C. § 114), and maintenance (23 U.S.C. § 116) of Interstate highways, and for inspections and approvals to insure compliance.

The statutes referred to in the State's brief are part of the Federal-Aid Highway Act, 23 U.S.C. §§ 101 through 160 (1958). A more complete explanation of the controlling provisions is found in *Daye v. Commonwealth of Pennsylvania* (1972), 344 F. Supp. 1337. That court explained that:

> Section 106(a) provides for the submission by the state and approval by the United States Secretary of Transportation [Secretary] of surveys, plans, specifications and estimates for each proposed project. Section 109(a) provides that the Secretary shall not approve the plans and specifications unless they are conducive to traffic needs, safety, durability and economy. Section 109(d) provides that the location of highway signs shall be subject to the approval of the State Highway Department with the concurrence of the Secretary. Section 109(e) provides that no funds shall be approved unless proper safety protective devices complying with certain safety standards approved by the Secretary are installed. Section 114(a) provides that highway construction shall be under the supervision of the State Highway Department, subject to the inspection and approval of the Secretary. Section 116(a) provides that it is the duty of the state to maintain the highways, and Section 116(c) provides that if the highway is not being properly maintained, the Secretary may withhold approval of further projects.

18

*Daye*, 344 F. Supp. at 1347.

The State cites *Daye* for the principle that these federal statutes do not create a duty on the part of the State to construct and maintain its fences and protective devices. However, I do not agree with that interpretation of *Daye*. The Federal District Court simply found that the statutes in question did not give rise to an independent private cause of action which was in contravention of Pennsylvania's immunity statutes. However, it is clear that the statutes create a duty on the part of the State to comply with federal requirements as a condition to federal funding, and the State concedes that those requirements included constructing and maintaining the fences which are the subject of plaintiffs' complaint.

Finally, it appears to me that the majority opinion is based on several false premises. The Court concluded that § 60-7-103, MCA, which requires fencing of the right-of-way constructed through open range areas was not applicable because the location where this accident occurred was within a horse herd district. However, the majority then proceeds to justify its decision based upon its conclusion that "Montana has been, and continues to be, an open range state." They hold that "[u]nder the open range doctrine, neither the State nor livestock owners have a duty to prevent livestock from wandering onto roadways." Why does the majority rely on the fact that this is a herd district for purposes of rejecting plaintiffs' claim that the State had a statutory duty to

19

fence, and then rely on an inconsistent conclusion that Montana is an open range state when it declines to impose a common law duty to maintain the State's fences?

Likewise, the majority concludes that since the Montana Legislature has not imposed a duty to fence the particular right-of-way where this accident occurred, we should not impose that duty. What about the duties imposed by the federal government and by the Department of Highways itself?

To me, this claim involves simple issues. The State, by statute, had a duty to maintain its property, including its fence and cattle guard, in a condition that would have prevented unreasonable risk of harm to others, including motorists on the interstate highway. Plaintiffs alleged that it failed to do so and that Elroy Yager was injured as a result of that negligent omission. The State has offered no evidence to the contrary, therefore, summary judgment should have been denied. If the statutory duty imposed on everyone in Montana to exercise reasonable care in the maintenance of their property is not a clear enough creation of a duty for the majority, then certainly the obligations imposed by the Highway Department's own maintenance manual, or the commitment made by the State, pursuant to federal statute, in order to obtain federal highway funds, create additional duties.

I am at a loss to find any justification for the majority opinion. If the State was not negligent, or if the State's negligence was not a cause of injury to Mr. Yager, then our laws

20

should protect the State from liability. However, if the State was negligent, and its negligence caused harm to Mr. Yager, then simple fairness and justice require that the State be accountable for its conduct. It is beyond my comprehension why any court would go to the lengths that this Court has gone to in an effort to allow the State to avoid accountability for its negligent omissions.

By its reliance on statutes which are irrelevant, and prior case law which is not on point, the majority has constructed what appears at first glance to be a rational justification for denying recovery in this case. The question that I have a difficult time understanding is to what justifiable purpose is that effort directed?

For these reasons, I dissent from the majority opinion. I would reverse the judgment of the District Court.

_____
Justice

21